**QUANTUM LEGAL LLC**
RICHARD J. BURKE (BAR NO. 6255504)
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Telephone:  847-433-4500
Facsimile:   847- 433-2500

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
W. DANIEL "DEE" MILES, III (*pro hac vice forthcoming*)
C. LANCE GOULD (*pro hac vice forthcoming*)
ALISON D. HAWTHORNE *(pro hac vice forthcoming)*
272 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama 36104
Telephone:  334-269-2343
Facsimile:   334-954-7555

*Attorneys for Plaintiff-Relator*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **[UNDER SEAL],**<br><br>　　　**Plaintiffs,**<br><br>**v.**<br><br>**[UNDER SEAL],**<br><br>　　　**Defendants.** | Civil Action No.  **17-cv-765-SMY-DGW**<br><br>**COMPLAINT**<br>**AND JURY DEMAND**<br><br>**Filed Under Seal Pursuant to**<br>**31 U.S.C. § 3730(b)(2)** |

# FILED UNDER SEAL

# NOT TO BE FILED
# ON PACER

**QUANTUM LEGAL LLC**
RICHARD J. BURKE (BAR NO. 6255504)
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Telephone:  847-433-4500
Facsimile:  847- 433-2500

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
W. DANIEL "DEE" MILES, III (*pro hac vice forthcoming*)
C. LANCE GOULD W. DANIEL "DEE" MILES, III (*pro hac vice forthcoming*)
ALISON D. HAWTHORNE *(pro hac vice)*
272 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama 36104
Telephone:  334-269-2343
Facsimile:  334-954-7555

*Attorneys for Plaintiff-Relator*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, and STATE OF WASHINGTON *ex rel.* CIMZNHCA, LLC,<br><br>       Plaintiffs,<br><br>       v.<br><br>UCB, INC.; RXC ACQUISITION COMPANY (DBA RX CROSSROADS); OMNICARE, INC.; AND CVS HEALTH CORPORATION,<br><br>       Defendants. | **Civil Action No. 17-cv-765-SMY-DGW**<br><br>**COMPLAINT**<br>**AND JURY DEMAND**<br><br>**Filed Under Seal Pursuant to**<br>**31 U.S.C. § 3730(b)(2)** |

## PRELIMINARY STATEMENT

1.     Plaintiff-Relator CIMZNHCA, LLC ("CIMZNHCA"), through its undersigned attorneys, allege, based upon personal knowledge, relevant documents, investigations and information and belief, as follows:

2.     This is a civil action brought against Defendant UCB, Inc. ("UCB"), and Defendants RXC Acquisition Company (*d/b/a* RXCrossroads), Omnicare, Inc., and CVS Health Corporation, collectively referred to as "RXC," on behalf of the Government under the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "False Claims Act" or "FCA and the false claims acts of the respective Plaintiff States[1] to recover treble damages sustained by, and civil penalties and restitution owed to, the United States Government and the respective state governments as a result of two intertwined, unlawful drug marketing schemes.

3.     Since at least 2011, through the implementation of two different schemes, UCB and RXC clinicians have provided remuneration in the form of free services to prescribing

---

[1] The state statues are the: (1) California False Claims Act, Cal. Gov't Code §§ 12650 – 12656;  (2) Colorado Medicaid False Claims Act, Colo. Rev. Stat. Ann. §§ 25.5-4-303.5 – 4-310;  (3) Connecticut False Claims and Other Prohibited Acts Under State-Administered Health or Human Services Programs Act, Conn. Gen. Stat. Ann. §§ 4-274 – 289;  (4) Delaware False Claims and Reporting Act, Del. C. Ann. tit. 6, §§ 1201 – 1211; (5) District of Columbia Medicaid Fraud Enforcement and Recovery Amendment Act of 2012, D.C. Code Ann. §§ 2-381.01 – 381.10; (6) Florida False Claims Act, Fla. Stat. Ann. §§ 68.081 – 68.092; (7) Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168 – 4-168.6; (8) Hawaii False Claims to the State Act, Haw. Rev. Stat. Ann. §§ 661-21 – 31; (9) Illinois False Claims Act, 740 Ill. Comp. Stat. Ann. §§ 175/1 – 175/8; (10) Indiana False Claims and Whistleblower Protection Act, Ind. Code Ann. §§ 5-11-5.5-1 – 5.5-18; (11) Iowa False Claims Act, Iowa Code Ann. §§ 685.1 – 685.7; (12) Louisiana Medical Assistance Programs Integrity Law, La. Stat. Ann. §§ 437.1 – 440.16; (13) Maryland False Claims Act, Md. Code Ann. Health-Gen. §§ 8-101 – 111; (14) Massachusetts False Claims Law, Mass. Gen. Laws Ann. ch. 12, §§ 5A – 5O; (15) Michigan Medicaid False Claim Act, Mich. Comp. Laws Ann. §§ 400.601 – 615; (16) Minnesota False Claims Act, Minn. Stat. Ann. §§ 15C.01 – 16; (17) Montana False Claims Act, Mont. Code. Ann. §§ 17-8-401 – 416; (18) Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. Ann. §§ 357.010 – 357.250; (19) New Hampshire Medicaid Fraud and False Claims Act, N.H. Rev. Stat. Ann.§§ 167:61-b – 61-e; (20) New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32C-1 – 32C-18; (21) New Mexico Medicaid False Claims Act, N.M. Stat. Ann.§§ 27-14-1 – 14-15; (22) New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §§ 44-9-1 – 9-14; (23) New York False Claims Act, N.Y. Fin. Law §§ 187 – 194; (24) North Carolina False Claims Act, N.C. Gen. Stat. Ann. §§ 1-605 – 618; (25) Oklahoma Medicaid False Claims Act, Okl. Stat. Ann. tit. 63, §§ 5053 – 5054; (26) Rhode Island State False Claims Act, R.I. Gen. Laws Ann. §§ 9-1.1-1 – 9; (27) Tennessee False Claims Act, Tenn. Code Ann. §§ 4-18-101 – 108; (28) Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 – 185; (29) Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. §§ 36.001 – 36.132; (30) Virginia Fraud Against Tax Payers Act, Va. Code Ann. §§ 8.01-216.1 – 216.19; and (31) Washington Medicaid Fraud False Claims Act, Wash. Rev. Code Ann. §§ 74.66.005 – 74.66.130.

providers in order to induce those providers to recommend UCB's drug, Cimzia, to patients—a more typical unlawful "quid pro quo" kickback scheme.   As a result of these schemes, pharmacies have submitted and continue to submit claims to Medicare and Medicaid that were tainted by kickbacks, causing these programs to pay tens of millions of dollars in improper reimbursements.   These schemes are ongoing.

4.     UCB and RXC's schemes undermine the independent decision making of providers, an important element in Government Healthcare Program coverage policy.   The providers prescribing UCB's drug, Cimzia, did not necessarily do so because they believed, based on their review of peer-reviewed medical literature or discussion with their colleagues, that the drug would help their patients.   Rather, UCB's drug, Cimzia, was and often is supplied because the UCB and RXC actively and improperly pursued and enticed providers with free services and other forms of remuneration.

5.     As a result of these schemes, pharmacies have submitted and continue to submit claims to Medicare and Medicaid that were tainted by kickbacks, causing these programs to pay tens of millions of dollars in improper reimbursements.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims Relator brings on behalf of the United States under the FCA pursuant to 28 U.S.C. §§ 1331 and 1345.   This Court has supplemental jurisdiction over the claims asserted under the laws of the State of California, the State of Colorado, the State of Connecticut, the State of Delaware, the District of Columbia, the State of Florida, the State of Georgia, the State of Hawaii, the State of Illinois, the State of Indiana, the State of Iowa, the State of Louisiana, the State of Maryland, the Commonwealth of Massachusetts, the State of Michigan, the State of Minnesota, the State of Montana, the State of

Nevada, the State of New Hampshire, the State of  New Jersey, the State of New Mexico, the State of New York, the State of North Carolina, the State of Oklahoma, the State of Rhode Island, the State of Tennessee, the State of Texas, the Commonwealth of Virginia, and the State of Washington, pursuant to 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

7.    This Court may exercise personal jurisdiction over UCB and RXC and venue is proper in this District pursuant to 31 U.S.C. § 3732(a) as well as 28 U.S.C. §§ 1391(b) and 1391(c) because UCB and RXC each transact business in this District and, in furtherance of its fraudulent kickback schemes, caused to be submitted or conspired to submit false claims in this District.

8.    Relator has direct and independent knowledge on which the allegations herein are based, is an original source of this information, and has voluntarily provided the information to the United States before filing this action based on the information known to Relator.  This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media.  To the extent that there has been any public disclosure unknown to Relator, Relator is an original source under 31 U.S.C. § 3730(e)(4) and the applicable provisions of the respective State False Claims Act laws.

## PARTIES

9.    Relator CIMZNHCA, LLC ("CIMZNHCA") is a New Jersey-based entity formed to investigate and act as the Relator for the matters alleged herein.

10.    Relator brings this action on behalf of the United States pursuant to the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. § 3729 et seq.

11. Defendant UCB, Inc. ("UCB") is a human therapeutics company in the biotechnology industry. It conducts business throughout the United States (including the Southern District of Illinois) and in many other countries. Defendant UCB is incorporated in the State of Delaware and has its United States headquarters in Smyrna, Georgia with its principal place of business located at 1950 Lake Park Drive, Smyrna, Georgia 30080. Defendant UCB engages in the discovery, development, manufacture, and delivery of bio-therapeutics (e.g., prescription drugs) for various medical needs.  Defendant UCB's drugs include the drug, Cimzia.

12. Defendant RXC Acquisition Company (*d/b/a* RXCrossroads) is a Delaware corporation headquartered in Kentucky with its principal place of business located at 1901 Eastpoint Parkway, Louisville, Kentucky, 40223.   In 2005, Defendant RXC Acquisition Company (*d/b/a* RXCrossroads) was acquired by Defendant Omnicare, Inc.  Later, in 2015, Defendant RXC Acquisition Company (*d/b/a* RXCrossroads) and Defendant Omnicare, Inc. were acquired by Defendant CVS Health Corporation.  Defendant RXC Acquisition Company (*d/b/a* RXCrossroads) provides and coordinates services between wholesale distributors, home health agencies, nurse educators, pharmacies, and health care product manufacturers, including UCB. It conducts business throughout the United States (including the Southern District of Illinois).

13. Defendant Omnicare, Inc. ("Omnicare") is a Delaware corporation headquartered in Cincinnati, Ohio with its principal place of business located at Omnicare, Inc. 900, Omnicare Center 201, East Fourth Street, Cincinnati Ohio, 45202.   Defendant Omnicare purchased Defendant RXC Acquisition Company (*d/b/a* RXCrossroads) in 2005.  Defendant Omnicare is a wholly owned subsidiary of Defendant CVS Health Corporation and provides comprehensive

pharmaceutical services to patients and providers across the United States (including the Southern District of Illinois).

14.     Defendant CVS Health Corporation ("CVS") is Delaware corporation headquartered in Woonsocket, Rhode Island with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895.  Defendant CVS acquired Defendant RXC Acquisition Company (*d/b/a* RXCrossroads) and Defendant Omicare in 2015. Defendant CVS is the largest pharmacy health care provider in the United States, with integrated offerings across the spectrum of pharmacy care.  It conducts business throughout the United States (including the Southern District of Illinois).

15.      Defendant RXC Acquisition Company (*d/b/a* RXCrossroads), Defendant Omicare, and Defendant CVS are collectively referred to herein as "Defendant RXC" and/or "RXC."

16.     Defendant UCB and Defendant RXC are collectively referred to herein as "Defendants."

## STATUTORY BACKGROUND

### A.     The False Claims Act

17.     The FCA establishes treble damages liability to the United States for any individual or entity that:

> knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or
>
> conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

31 U.S.C. § 3729(a)(1)(A)-(C).  Within the meaning of the FCA, "knowing" is defined to

include reckless disregard and deliberate indifference. *Id*.

18. In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim. The civil penalties range from (a) $5,500 to $11,000 for violations that occurred prior to November 2, 2015; (b) $10,781 to $21,563 for violations that occurred from November 3, 2015 to February 2, 2017; and (c) $10,957 to $21,916 for violations that occurred after February 3, 2017. *See, e.g.,* 64 Fed. Reg. 47099, 47103 (1999).

**B.    The Anti-Kickback Statute**

19. The Anti-Kickback Statute, 42 U.S.C. §1320a-7b *et seq.* ("AKS"), states as follows in relevant part:

(b) Illegal remunerations

(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for

- 9 -

which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

20.    For purposes of the AKS, "remuneration" includes the transfer of anything of value, in cash or in-kind, directly or indirectly, covertly or overtly. Importantly, the statute has been interpreted to cover any arrangement where one purpose of the remuneration is to obtain money for referral of services or to induce further referrals.

21.    The AKS is designed to, among other things, ensure that patient care will not be improperly influenced by inappropriate compensation from the pharmaceutical industry.

22.    In order to ensure compliance, every federally-funded health care program requires every provider or supplier to ensure compliance with the provisions of the AKS and other federal laws governing the provision of health care services in the United States.

23.    The AKS was amended in March 2010 as part of the Patient Protection and Affordable Care Act ("PPACA"), which clarified that all claims resulting from a violation of the Anti-Kickback Statute are also a violation of the FCA. 42 U.S.C. § 1320a-7(b)(g). The PPACA also amended the Social Security Act's "intent requirement" to make clear that violations of its anti-kickback provisions, like violations of the FCA, may occur even if an individual does "not have actual knowledge" or "specific intent to commit a violation." 18 U.S.C. § 1347(b).

24.    Knowingly providing kickbacks to providers to induce them to prescribe a drug (or to influence provider prescriptions) for individuals who seek reimbursement for the drug

from a federal government health care program or causing others to do so, while certifying compliance with the AKS (or while causing another to so certify), or billing the government as if in compliance with these laws, violates the FCA.

25.     The Balanced Budget Act of 1997 amended the AKS to include administrative civil penalties of $50,000 for each violation, as well as an assessment of not more than three times the amount of remuneration offered, paid, solicited or received, without regard to whether a portion of that amount was offered, paid or received for a lawful purpose. *See* 42 U.S.C. § 1320a-7a(a).

26.     The AKS contains statutory exceptions and certain regulatory "safe harbors" that exclude certain types of conduct from the reach of the statute. *See* 42 U.S.C. § 1320a-7b(b)(3). None of the statutory exceptions or regulatory safe harbors protect the Defendants from liability for the conduct alleged herein. Compliance with the AKS is a condition of payment under federal health care programs.

## AFFECTED HEALTH PROGRAMS

27.     Generally, when a physician prescribes a drug, a patient is provided with a prescription that is then filled at a pharmacy. The pharmacy then submits the claim for payment to the relevant federal health care program(s) for reimbursement.

28.     In certain circumstances, a federal program may also have pharmacy facilities that directly dispense prescription drugs. In such cases, the federal health care program purchases the drug directly rather than reimbursing the pharmacy.

### A.     Medicare

29.     Medicare is a federal program that provides federally subsidized health insurance primarily for persons who are sixty-five years old or older or disabled. *See* 42 U.S.C. §§ 1395, *et*

*seq.* ("Medicare Program").   Part D of the Medicare Program was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, to provide prescription drug benefits for Medicare beneficiaries. Medicare Part D became effective January 1, 2006.  All persons enrolled in Medicare Part A and/or Medicare Part B are eligible to enroll in a prescription drug plan under Part D.  The United States Department of Health and Human Services ("HHS"), through its component agency, the Centers for Medicare and Medicaid Services ("CMS"), contracts with private companies (or "Part D sponsors") to administer prescription drug plans.  Such companies are regulated and subsidized by CMS pursuant to one-year, annually renewable contracts. Part D sponsors enter into contracts with many pharmacies to provide drugs to the Medicare Part D beneficiaries enrolled in their plans.

30.     Generally, after a physician writes a prescription for a patient who is a Medicare beneficiary, that patient can take the prescription to a pharmacy to be filled. When the pharmacy dispenses drugs to the Medicare beneficiary, the pharmacy submits a claim electronically to the beneficiary's Part D sponsor, sometimes through the sponsor's pharmacy benefit manager ("PBM"). The pharmacy receives reimbursement from the sponsor (or PBM) for the portion of the drug cost not paid by the beneficiary. The Part D sponsor is then required to submit to CMS an electronic notification of the drug dispensing event, referred to as the Prescription Drug Event ("PDE"), which contains data regarding the prescription claim, including the service provider of the drug, the prescriber of the drug, the quantity dispensed, the amount it has paid to the pharmacy, and whether the drug is covered under the Medicare Part D benefit.

31.     Payments to a Part D Plan sponsor are conditioned on the provision of information to CMS that is necessary for CMS to administer the Part D program and make payments to the Part D Plan sponsor for qualified drug coverage. 42 C.F.R. § 423.322. CMS's

instructions for the submission of Part D prescription PDE claims data state that "information . . . necessary to carry out this subpart" includes the data elements of a PDE. PDE records are an integral part of the process that enables CMS to administer the Part D benefit. Each PDE that is submitted to CMS is a summary record that documents the final adjudication of a dispensing event based upon claims received from pharmacies and serves as the request for payment for each individual prescription submitted to Medicare under the Part D program.

32.     CMS gives each Part D sponsor advance monthly payments consisting of the Part D sponsor plan's direct subsidy per enrollee (which is based on a standardized bid made by the Part D sponsor), estimated reinsurance subsidies for catastrophic coverage, and estimated low income subsidies. 42 C.F.R. §§ 423.315, 423.329. At the end of the payment year, CMS reconciles the advance payments paid to each Part D sponsor with the actual costs the sponsor has incurred. In this reconciliation process, CMS uses the PDE claims data it has received from the Part D sponsor during the prior payment year to calculate the costs the Part D sponsor has actually incurred for prescriptions filled by Medicare beneficiaries under Part D. If CMS underpaid the sponsor for low-income subsidies or reinsurance costs, it will make up the difference. If CMS overpaid the sponsor for low-income subsidies or reinsurance costs, it will recoup the overpayment from the sponsor. After CMS reconciles a plan's low-income subsidy and reinsurance costs, it then determines risk-sharing amounts owed by the plan to CMS or by CMS to the plan related to the plan's direct subsidy bid. Risk-sharing amounts involve calculations based on whether and to what degree a plan's allowable costs exceeded or fell below a target amount for the plan by certain threshold percentages. 42 C.F.R.§ 423.336.

33.     CMS's payments to the Part D sponsor come from the Medicare Prescription Drug Account, an account within the Federal Supplementary Medical Insurance Trust Fund. 42

C.F.R.§ 423.315(a).

34.     In order to receive Part D funds from CMS, Part D Plan sponsors, as well as their authorized agents, employees, and contractors (including pharmacies), are required to comply with all applicable federal laws, regulations, and CMS instructions.

35.     By statute, all contracts between a Part D Plan sponsor and HHS must include a provision whereby the Plan sponsor agrees to comply with the applicable requirements and standards of the Part D program as well as the terms and conditions of payment governing the Part D program.  42 U.S.C. § 1395w-112.

36.     Medicare Part D Plan sponsors must also certify in their contracts with CMS that they agree to comply with all federal laws and regulations designed to prevent fraud, waste, and abuse, including the FCA and AKS. 42 C.F.R.§ 423.505(h)(l).

37.     In accordance with these express statutory and regulatory requirements, all contracts entered into between CMS and Plan D Plan sponsors from 2006 through the present include a provision in which the sponsor "agrees to comply with . . . federal laws and regulations designed to prevent . . . fraud, waste, and abuse, including, but not limited to, applicable provisions of Federal criminal law, the False Claims Act (31 U.S.C. §§ 3729, et seq.), and the anti-kickback statute (§ 1127B(b) of the Act)."

38.     CMS regulations further require that all contracts between Part D Plan sponsors and downstream entities, such as pharmacies and PBMs, contain language obligating the pharmacy to comply with all applicable federal laws, regulations, and CMS instructions. 42 C.F.R. § 423.505(i)(4)(iv).

39.     A Part D Plan sponsor also is required by federal regulation to certify to the accuracy, completeness and truthfulness of the PDE claims data submitted to CMS. Specifically,

the relevant regulatory provision, entitled "Certification of data that determine payment", provides in relevant part:

> (1) General rule. As a condition for receiving a monthly payment under subpart G of this part (or for fallback entities, payment under subpart Q of this part), the Part D plan sponsor agrees that its chief executive officer (CEO), chief financial officer (CFO), or an individual delegated the authority to sign on behalf of one of these officers, and who reports directly to the officer, must request payment under the contract on a document that certifies (based on best knowledge, information, and belief) the accuracy, completeness, and truthfulness of all data related to payment. The data may include specified enrollment information, claims data, bid submission data, and other data that CMS specifies.

> (2) Certification of enrollment and payment information. The CEO, CFO, or an individual delegated the authority to sign on behalf of one of these officers, and who reports directly to the officer, must certify (based on best knowledge, information, and belief) that each enrollee for whom the organization is requesting payment is validly enrolled in a program offered by the organization and the information CMS relies on in determining payment is accurate, complete, and truthful and acknowledge that this information will be used for the purposes of obtaining Federal reimbursement.

> (3) Certification of claims data. The CEO, CFO, or an individual delegated with the authority to sign on behalf of one of these officers, and who reports directly to the officer, must certify (based on best knowledge, information, and belief) that the claims data it submits under § 423.329(b)(3) (or for fallback entities, under§ 423.87l(f)) are accurate, complete, and truthful and acknowledge that the claims data will be used for the purpose of obtaining Federal reimbursement.

42 C.F.R. § 423.505(k).

40.    Compliance with the regulatory requirement that the PDE data submitted to CMS is "true, accurate, and complete" is a condition of payment under the Medicare Part D program to

the extent that it involves a violation of the AKS.

41.    In accordance with this regulatory requirement, since the Part D program began, Medicare has required each Part D Plan sponsor to sign annually an Attestation of Data Relating to CMS Payment to a Medicare Part D Sponsor ("Attestation").  This Attestation states:

> Pursuant to the contract(s) between the Centers for Medicare & Medicaid Services (CMS) and the Medicare Part D Organization(s) listed above, hereafter referred to as the Part D Organization, governing the operation of the contract numbers listed above, the Part D Organization hereby makes the following attestations concerning CMS payments to the Part D Organization:

> The Part D Organization attests that based on its best knowledge, information, and belief, the final Prescription Drug Event (PDE) data that have been submitted to and accepted by CMS as of [date] with respect to the Part D plans offered under the above-stated contract(s) for the dates of service of January 1, [prior year] to December 31, [prior year], are accurate, complete, and truthful and reflect all retroactive adjustments of which the Part D organization has been informed by May 30, [current year]. In addition, the Part D Organization attests that based on best knowledge, information, and belief, the payments that have been made by the Part D organization for the claims summarized by the aforementioned PDE data were made in accordance with the coordination of benefits guidance in Chapter 14 of the Medicare Prescription Drug Benefit Manual and other applicable CMS guidance. The Part D Organization attests that based on its best knowledge, information, and belief as of the date(s) of last successful DIR [Direct and Indirect Remuneration Data] [prior year] data submission(s) via the Health Plan Management System (HPMS) as listed above, the final direct and indirect remuneration data submitted to CMS for the Part D plans offered under the above-stated contract(s) for the [prior] coverage year are accurate, complete, and truthful and fully conform to the requirements in the Medicare Part D program regulations and the Final Medicare Part D DIR Reporting Requirements for [the prior year]. The Part D Organization also certifies that based on its best knowledge, information, and belief as of the date indicated below, all other required information provided to CMS to support the

- 16 -

determination of allowable reinsurance and risk corridor costs for the Part D plans offered under the above-stated contract(s) is accurate, complete, and truthful. With regards to the information described in the above paragraphs, the Part D Organization attests that it has required all entities, contractors, or subcontractors, which have generated or submitted said information (PDE and DIR data) on the Part D Organization's behalf, to certify that this information is accurate, complete, and truthful based on its best knowledge, information, and belief. In addition, the Part D Organization attests that it will maintain records and documentation supporting said information. The Part D Organization acknowledges that the information described in the above paragraphs will be used for the purposes of obtaining federal reimbursement and that misrepresentations or omissions in information provided to CMS may result in Federal civil action and/or criminal prosecution.

42.     All approved Part D Plan sponsors who received payment under Medicare Part D in benefit years 2006 through the present date submitted these required Attestations in the same or similar format.

43.     Medicare regulations further provide: "If the claims data are generated by a related entity, contractor, or subcontractor of a Part D plan sponsor, the entity, contractor, or subcontractor must similarly certify (based on best knowledge, information, and belief) the accuracy, completeness, and truthfulness of the data and acknowledge that the claims data will be used for the purposes of obtaining Federal reimbursement." 42 C.F.R. § 423.505(k)(3).

44.     Medicare also enters into agreements with physicians to establish the physician's eligibility to participate in the Medicare program. For the physician to be eligible for participation in the Medicare program, physicians must certify that they agree to comply with the Anti-Kickback Statute, among other federal health care laws. Specifically, on the Medicare enrollment form, CMS Form 855I, the "Certification Statement" that the medical provider signs states: "You MUST sign and date the certification statement below in order to be enrolled in the

Medicare program. In doing so, you are attesting to meeting and maintaining the Medicare requirements stated below." Those requirements include:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me ... The Medicare laws, regulations and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.  I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity

**B.    Medicaid**

45.    Medicaid is a joint federal-state program created in 1965 that provides health care benefits for certain groups, primarily the poor and disabled. Each state administers a State Medicaid program. The federal Medicaid statute requires each participating state to implement a plan containing certain specified minimum criteria for coverage and payment of claims. 42 U.S.C. §§ 1396, 1396a(a)(13), 1396a(a)(30)(A). While drug coverage is an optional benefit, the Medicaid programs of all states provide reimbursement for prescription drugs.

46.    The federal portion of each state's Medicaid payments, known as the Federal Medical Assistance Percentage ("FMAP"), is based on the state's per capita income compared to the national average. 42 U.S.C. § 1396d(b). Among the states, the FMAP is at least fifty percent and is as high as eighty-three percent. Federal funding under Medicaid is provided only when there is a corresponding state expenditure for a covered Medicaid service to a Medicaid recipient. The federal government pays to the state the statutorily established share of the "total amount expended ... as medical assistance under the State plan." 42U.S.C. § 1396b(a)(l).

47.    The vast majority of states award contracts to private companies to evaluate and

process claims for payment on behalf of Medicaid recipients. Typically, after processing the claims, these private companies then generate funding requests to the state Medicaid programs. Before the beginning of each calendar quarter, each state submits to CMS an estimate of its Medicaid federal funding needs for the quarter. CMS reviews and adjusts the quarterly estimate as necessary, and determines the amount of federal funding each state will be permitted to draw down as it incurs expenditures during the quarter. The state then draws down federal funding as actual provider claims, including claims from pharmacies seeking payment for drugs, are presented for payment. After the end of each quarter, the state then submits to CMS a final expenditure report, which provides the basis for adjustment to the quarterly federal funding amount (to reconcile the estimated expenditures to actual expenditures). 42 C.F.R. § 430.30.

48.     Claims arising from illegal kickbacks are not authorized to be paid under state regulatory regimes.   In fact, providers who participate in the Medicaid program must sign enrollment agreements with their states that certify compliance with the state and federal Medicaid requirements, including the AKS. Although there are variations among the states, the agreement typically requires the prospective Medicaid provider to agree that he or she will comply with all state and federal laws and Medicaid regulations in billing the state Medicaid program for services or supplies furnished.

49.     Furthermore, in many states, Medicaid providers, including both physicians and pharmacies, must affirmatively certify compliance with applicable federal and state laws and regulations.

50.     For example, in Illinois, physicians and pharmacies must sign an "Agreement for Participation in the Illinois Medical Assistance Program," in which the provider certifies that it is in compliance with applicable federal and state laws and regulations.

### C.    TRICARE

51.    TRICARE (formerly known as CHAMPUS), is part of the United States military's health care system, designed to maintain the health of active duty service personnel, provide health care during military operations, and offer health care to non-active duty beneficiaries, including dependents of active duty personnel, and military retirees and their dependents. The military health system, which is administered by the Department of Defense ("DOD"), is composed of the direct care system, consisting of military hospitals and military clinics, and the benefit program, known as TRICARE. TRICARE is a triple-option benefit program designed to give beneficiaries a choice between health maintenance organizations, preferred provider organizations, and fee-for-service benefits.

52.    TRICARE prescription drug benefits are provided through three different programs: military treatment facility outpatient pharmacies, TRICARE network retail pharmacies, and TRICARE's mail order service. TRICARE contracts with a PBM to administer its retail and mail order pharmacy programs.  In-addition, TRICARE beneficiaries can also pay out-of-pocket to fill prescriptions at non-network retail pharmacies and submit a claim for reimbursement directly with TRICARE's PBM. The claims process is different for each of these pharmaceutical programs.

53.    When a TRICARE beneficiary brings a prescription to a TRICARE network retail pharmacy, for example, the pharmacy submits an electronic claim to the PBM for that prescription event. The PBM sends an electronic response to the pharmacy that confirms the beneficiary's TRICARE coverage, and, if the prescription claim is granted, informs the pharmacy of the calculated pharmacy reimbursement amount and the co-pay (if applicable) to be collected from the beneficiary. The pharmacy then collects the co-pay amount (if any) from the

beneficiary and dispenses the medication. After a 10-day hold to ensure the prescription was picked up and not returned to the shelf by the pharmacy, the PBM sends a TRICARE Encounter Data ("TED") record electronically to TRICARE. The TED record includes information regarding the prescription event, including the reimbursement amount to be paid to the dispensing pharmacy. TRICARE then authorizes the PBM to make payment to the pharmacy for the amount remaining (after co-pay) on the claim. The PBM sends the payment to the pharmacy. After the payment is made by the PBM's bank, the PBM's bank requests reimbursement from the Federal Reserve Bank ("FRB"). The FRB then transfers funds to the PBM's bank account.

54.    If the prescription is filled at a non-network retail pharmacy, the beneficiary must pay the full price of the prescription to the pharmacist and file a claim for reimbursement on DD Form 2642, TRICARE DoD/CHAMPUS Medical Claim -- Patient's Request for Medical Payment ("Form 2642"). The Form 2642 is mailed to the PBM. As in the case of reimbursements under the retail pharmacy program, a TED record is created and sent to TRICARE. TRICARE then authorizes payment to the TRICARE beneficiary. Upon receiving that authorization, the PBM issues a check to the beneficiary, which is drawn on the PBM's bank account. TRICARE then reimburses the PBM in the same manner as it does under the retail pharmacy program, such that funds are transferred from the FRB to the PBM's bank account.

55.    TRICARE beneficiaries can also fill prescriptions through TRICARE's mail order pharmacy program as well. TRICARE beneficiaries submit prescriptions by mail, fax, or electronically to TRICARE's PBM, along with any co-pay (if applicable). TRICARE's PBM delivers the prescription to the beneficiary via free standard shipping. The medications dispensed through the mail order pharmacy program are filled from the PBM's existing inventory of pharmaceuticals. The PBM then requests replenishment pharmaceuticals from DOD's national

prime vendor contracted by Defense Logistics Agency ("DLA"). DOD procures the pharmaceuticals through its national prime vendor and replenishes the PBM's inventory of pharmaceuticals after accumulated dispensing reach full package size amounts. The PBM then submits a TED record to TRICARE to obtain administrative fees in connection with that prescription event. DLA bills TRICARE directly for drug replenishment costs.

56.    Pursuant to 38 U.S.C. § 8126, pharmaceutical manufacturers are required to enter into national contracts with the DOD pursuant to which the manufacturer makes available for procurement certain covered drugs at the Federal Ceiling Price (a price that is calculated as at least 24% less than the manufacturer's average price based on all sales to commercial customers through a wholesaler or distributor). Pursuant to DOD's contract with its national prime vendor, the national prime vendor submits an invoice to the DOD for payment of pharmaceuticals supplied to the PBM in connection with the mail order pharmacy program, charging the DOD the price set by the contract awarded by the DOD to the drug manufacturer.

57.    Since March 2003, TRICARE has contracted with a pharmacy benefits manager, Express Scripts, Inc. ("ESI"), to administer TRICARE's mail order pharmacy programs. ESI has also administered TRICARE's retail pharmacy program since June 2004.

58.    Similarly, TRICARE's military treatment facilities purchase medications through procurement contracts with third party pharmaceutical prime vendors. When a TRICARE beneficiary submits an outpatient prescription to a military treatment facility's outpatient pharmacy, the pharmacy purchases the medication from the prime vendor pursuant to an existing procurement contract, and the drug is then dispensed to the patient.

59.    While some physicians enroll in the TRICARE program as network or· participating providers, any physician that is licensed, accredited and meets other standards of

the medical community is authorized to provide services to TRICARE beneficiaries. Physicians who are enrolled in the TRICARE network must expressly certify their compliance with TRICARE's regulations. Yet all providers that provide services to TRICARE beneficiaries, whether network providers or non-participating providers, are required to comply with TRICARE's program requirements, including its anti-abuse provisions. 32 C.F.R.§ 199.9(a)(4). TRICARE regulations provide that claims submitted in violation of TRICARE's anti-abuse provisions can be denied. *id.* § 199.9(b). Kickback arrangements are included within the definition of abusive situations that constitute program fraud. *Id.* §§ 199.2(b), 199.9(c)(12).

60.     The statutes and regulations set forth above concerning Medicare, Medicaid, and TRICARE, when viewed together, state that healthcare providers must comply with the AKS in order for claims they cause to be submitted to these programs to be reimbursed.  The claims submitted here violated the AKS in that these claims stemmed from prescriptions written by providers in exchange for bribes knowing that claims for reimbursement would be submitted to the above programs as a result.  As such, and as more fully discussed below, the prescribing healthcare providers expressly and impliedly falsely certified compliance with the conditions of payment for, at least, Medicare, Medicaid, and TRICARE.

61.     In addition to falsely certifying compliance with the AKS, the healthcare providers referred to herein also falsely certified compliance with contractual provisions that were conditions for payment.

62.     As detailed herein, UCB devised and implemented schemes whereby it gave kickbacks to third party "educators" from RXC to recommend that providers prescribe UCB's drug, Cimzia, whereby Defendants provided free, in-kind services to providers to induce those providers to prescribe Cimzia.

63.     Knowingly paying kickbacks to induce physicians to prescribe a drug on-label or off-label (or to influence physician prescriptions) for individuals who seek reimbursement for the drug from a federal health care program or causing others to do so, while certifying compliance with the AKS (or while causing another to so certify), or billing the Government as if in compliance with these laws, violates the FCA and similar state False Claims Acts.

## DEFENDANTS' FRAUDULENT SCHEMES

64.     In this matter, RXC contracted to provide UCB with a force of Nurse Educators to work with UCB's sales force to promote UCB's drug, Cimzia.  UCB's Cimzia Nurse Educators are health care professionals who possess training, knowledge and experience in disease management, pre-disease care, and disease prevention.    A Nurse Educator certification is "practice based" and requires health care professionals to gain professional experience working in the field.

65.     Certified Nurse Educators are recognized as specialty clinicians with particular training, education and experience in disease education and care.    Not surprisingly, Nurse Educators are in particular demand for providers who care for disease patients.  Many Nurse Educators are employed by primary care and specialty practices to work with disease patients. As clinicians with significant training, education and experience, Nurse Educators can command significant compensation in the healthcare workforce.

66.     In this matter, UCB paid RXC to unlawfully promote its Covered Drug, Cimzia, using Nurse Educators.

67.     Additionally, UCB induced providers to recommend its drug by offering and providing what is referred to as "reimbursement support" services through RXC.

- 24 -

### A.  *Quid Pro Quo* 1—Free Clinicians for Referrals

68.    UCB sought to incentivize disease care providers to choose UCB's drugs over competitors' drugs.  Here, UCB identified the unique and particular needs and challenges that disease care providers faced in managing their own practices and patients. Once these providers' needs and challenges were identified, UCB, through RXC, began selling these providers "solutions" to those needs and challenges.

69.    Specifically, UCB began offering and then providing these providers the time, service and expertise of an RXC employed Nurse Educator both to help manage that providers' disease patients and to provide disease training to the providers' staff.  Of course, in typical *quid pro quo* fashion, in order to be given these services those providers would have to "support" (i.e., write prescriptions for) UCB's disease drug.

70.    Once trained and deployed, these Nurse Educators began to provide free education services to any provider who would prescribe UCB's Cimzia.  The RXC Nurse Educators were successful in saving prescribers time, money and resources and, in many instances, resulted in receiving higher reimbursement rates associated with certain disease care metrics.  Not surprisingly, UCB's drug sales have increased every year.

71.    UCB providing educational and other services to providers in exchange for recommending its drug, also violates the Anti-Kickback Statute.

### B.  *Quid Pro Quo* 2—Free Reimbursement Experts for Referrals

72.    UCB also induced providers to recommend its drug by offering and providing what is referred to as "reimbursement support" ("RS") services through RXC.

73.    UCB drug representatives' pitch to providers in this regard has essentially been as follows:

> *Dear Doctor:   If you prescribe our drug (i.e., "recommend" the patient to use our drug), we will give you the services and resources of a full reimbursement support team to manage the process associated with prescribing the drug.  This service will save you the cost and expenses normally associated with managing a patient's prescription and make your practice more profitable.*

74.    This value proposition was a powerful tool in the hands of UCB's drug representatives and used to influence providers to recommend UCB's Cimzia.  UCB's drug representatives could offer a provider an "on call" reimbursement support team to manage the patient's UCB drug prescriptions. RS services became very much a part of the UCB drug representatives' collective sales pitch.

75.    That is, rather than promoting and marketing its drug based on patient outcomes and efficacy, UCB introduced an additional incentive to providers to recommend its drug to patients.  UCB knew that this service would present a tangible value to the providers.  When that offer was accepted, the provider received the benefits of the RS service without actually having to pay for those services.

76.    Most importantly, these services resulted in greater profit from each provider's E/M unit charge.   It was in this fashion, giving a provider free RS services, that UCB "eliminate[d] an expense that [the provider] would have otherwise incurred"[2] if the provider would have had to perform the tasks associated with the UCB drug prescription.  Such "in kind" remuneration given to induce a recommendation for a UCB drug is an unlawful kickback under the AKS.

77.    Within the pharmaceutical industry, RXC openly promotes the nature of the services it offers to pharmaceutical companies and that their services will increase a

---

[2] Compliance Program Guidance for Pharmaceutical Manufacturers, 68 Fed. Reg. 23,731 (May 5, 2003) ("CPG") Section II (2), such service is a suspect remuneration as it "eliminate[d] an expense that the physician would have otherwise incurred (i.e., have independent value to the physician)".

pharmaceutical company's drug sales. UCB's Cimzia Nurse Educator program is marketed using a branded term, "CIMplicity."[3] The CIMplicity website touts "Support made simple for *your practice* and your patients" (emphasis added) including "Nurse support" (i.e. Nurse Educators) and "Comprehensive reimbursement assistance" (i.e. RS).[4] RXC also touts their "Field Force" of "Nurse Educators" on their website.[5]

78.    Here, UCB, through RXC gave providers an *a la carte* single point of contact person to manage the UCB prescription process – which greatly reduced and/or eliminated the providers' overhead and expenses that would otherwise have been associated with any UCB prescription.

79.    RXC RS services resulted in a great value to providers because it eliminated the time and expense of determining and verifying patients' insurance benefits, determining whether a prescribed drug was on formulary and determining co-pays and deductibles. RXC RS services also saved providers' staff time with phone calls to patients, as now RXC would manage each step and communicate with the patient directly.

80.    Through RXC, providers could also eliminate the time and expense of appealing a denial of benefits and the cumbersome prior authorization process.  Finally, providers no longer needed to manage a patient's call for refills or additional authorizations, as RXC managed this function as well.

81.    By giving a provider RS services, UCB gave a tangible "in kind" benefit that greatly reduced and in some instances eliminated a provider's administrative costs related to prescribing UCB's drug, Cimzia, and thus induced providers to choose UCB's drug, Cimzia,

---

[3] CIMplicity, http://cimziahcp.com/patient-support, (last visited December 27, 2016)
[4] *Id.*
[5] RXC Educators, https://www.rxcrossroads.com/OmnicareSCG/RXCrossroads/field-force, (last visited December 27, 2016)

over a competitor's drugs.

## DAMAGES

82.    As Defendants profited from the illegal schemes described in this Complaint, Medicare and Medicaid and other government health care programs were made to bear the costs. From 2011 to the present, Defendants' actions knowingly have caused pharmacies, Part D sponsors, Fiscal Intermediaries and others to submit millions of dollars in claims to Medicare and Medicaid for UCB's Cimzia provided to beneficiaries as a result of Defendants' illegal marketing and *quid pro quo* arrangements.   Those false claims have caused Medicare and Medicaid and other government health care programs to disburse tens of millions of dollars in reimbursements that should not have been paid.

## NO SAFE HARBOR

83.    The safe harbor provided for personal services business arrangements under certain circumstances does not apply to any of Defendants' actions or arrangements pleaded in this Complaint for at least the following reasons:  First, Defendants' agency agreement does not cover all of the services RXC provides and/or specify the services to be provided by RXC, or the agreement seeks to contract for the illegal activity described in this Complaint, rendering it void *ab initio*.   Second, the compensation UCB paid to the RXC Nurse Educators was not set in advance and is determined in a manner that takes into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare, Medicaid or other Federal health care programs.   Third, the services performed under the agreement involve the counseling or promotion of a business arrangement or other activity that violates any state or federal law.   Fourth, the aggregate

services contracted for exceed those which are reasonably necessary to accomplish the commercially reasonable business purpose of the services.

## SUMMARY

84.     As detailed above, the Defendants are liable to the federal government for damages based on the payment of all claims submitted to federal health care programs for prescriptions written for UCB's Cimzia beginning from the time they began paying remuneration up and through the present because the claims were the result of recommendations induced, in whole or in part, by remuneration.

85.     Compliance with the AKS is a precondition of payment by virtue of federal and state statutes, regulations, provider agreements, and contracts.

86.     The certifications and attestations signed by physicians, pharmacies, PBMs and Part D sponsors certified compliance with the AKS. Kickbacks that were paid to and received by Clinician Educators, physicians and other health care professionals, to recommend UCB's Cimzia as alleged herein rendered those certifications and attestations false. Those false statements were material to the false claims submitted for the Covered Drugs.

87.     Claims for UCB's Cimzia arising from the kickbacks expressly and impliedly misrepresent compliance with a material condition of payment, to wit, compliance with the AKS. Claims that include items or services resulting from a violation of the AKS constitute false or fraudulent claims under the AKS. 42 U.S.C. §§ 1320a-7a(7) and 1320a-7b(b) and 1320a-7b(g).

88.     By providing remuneration to Clinician Educators, physicians and other health care professionals, UCB intended to induce those Clinician Educators, physicians and other health care professionals, to recommend and/or prescribe UCB's Cimzia.

89.    It was reasonably foreseeable that some of those prescriptions would be for federal health care program beneficiaries and that claims for those prescriptions would be submitted to federal health care programs. Thousands of such prescriptions or claims based on such prescriptions were, in fact, submitted to and paid for by federal government health care programs.

**COUNTS**

**FIRST COUNT – AGAINST ALL DEFENDANTS**
**For Violations of the False Claims Act:**
**Presenting False Claims for Payment (31 U.S.C. § 3729(a)(1)(A))**

90.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

91.    Relator seeks relief against Defendants under Section 3729(a)(1)(A) of the FCA, 31 U.S.C. § 3729(a)(1)(A).

92.    As a result of UCB's offering or paying, and UCB's co-Defendants, physicians, and other health care professionals soliciting or receiving, kickbacks to purchase, order, or recommend the purchasing or ordering of UCB's drug, Cimzia, in violation of the federal AKS, 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), Defendants caused false and fraudulent claims for payment to be presented to federal health care programs.

93.    Accordingly, Defendants knowingly caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

94.    By reason of the false or fraudulent claims that Defendants knowingly caused to be presented to federal health care programs, the United States has been damaged in a substantial amount to be determined at trial, and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## SECOND COUNT – AGAINST ALL DEFENDANTS
### For Violations of the False Claims Act:
### Use of False Statements (31 U.S.C. § 3729(a)(1)(B))

95.    Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

96.    Relator seeks relief against Defendants under Section 3729(a)(1)(B) of the FCA, 31 U.S.C. § 3729(a)(1)(B).

97.    As a result of UCB's offering or paying, and UCB's co-Defendants, physicians, and other health care professionals soliciting or receiving, kickbacks to purchase, order, or recommend purchasing or ordering UCB's drug, Cimzia, in violation of the federal AKS, 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), Defendants  knowingly caused pharmacies, PBMs, Part D sponsors, fiscal intermediaries, and others to make false records or statements that were material to getting false or fraudulent claims paid by federal health care programs.

- 31 -

98.     More specifically, the pharmacies, PBMs, Part D sponsors, fiscal intermediaries, and others, falsely certified, and/or represented that the reimbursements they sought for UCB's drug, Cimzia, were in full compliance with applicable federal and state laws prohibiting fraudulent and false reporting, including but not limited to the AKS.  Those false certifications, statements, or representations caused federal health care programs to pay out sums that would not have been paid if those programs had been made aware of the falsity of the certifications, statements, or representations.

99.     Accordingly, Defendants caused the use of false records or statements material to false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(B).

100.     By reason of these false records or statements, the United States has been damaged in a substantial amount to be determined at trial, and is entitled to treble damages plus a monetary civil penalty for each false record or statement.

<u>**THIRD COUNT – AGAINST ALL DEFENDANTS**</u>
**For Violations of the False Claims Act:**
**Conspiring to Violate the False Claims Act (31 U.S.C. § 3729(a)(1)(C))**

101.     Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

102.     Relator seeks relief against Defendants under Section 3729(a)(1)(C) of the FCA, 31 U.S.C. § 3729(a)(1)(C).

103.     As set forth above, UCB conspired with UCB's co-Defendants, physicians, and other health care professionals to offer or pay kickbacks in exchange for, or to induce them to purchase, order, or recommend the purchasing or ordering of UCB's drug, Cimzia, in violation of the federal AKS, 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), thereby causing false and fraudulent

claims to be presented to federal health care programs seeking reimbursement for UCB's drug, Cimzia, dispensed in connection with the kickback scheme.

104.    Accordingly, Defendants conspired to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), in violation of 31 U.S.C. § 3729(a)(1)(C).

105.    By reason of the Defendants' conspiracy to violate 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), the United States has been damaged in a substantial amount to be determined at trial, and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## FOURTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the California False Claims Act
### Cal. Gov't Code §§ 12650 – 12656

106.    This is a claim for treble damages and civil penalties under the California False Claims Act, Cal. Gov't Code §§ 12650 – 12656.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

107.    Defendants violated the California False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of California as described herein.

108.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of California.

109.    The State of California, unaware of the false or fraudulent nature of these claims, paid such claims which the State of California would not otherwise have paid.

110.    By reason of these payments, the State of California has been damaged, and continues to be damaged, in a substantial amount.

**FIFTH COUNT– AGAINST ALL DEFENDANTS**
**For Violations of the Colorado Medicaid False Claims Act**
**Col. Rev. Stat. Ann. §§ 25.5-4-303.5 – 25.5-4-310**

111.    This is a claim for treble damages and civil penalties under the Colorado Medicaid False Claims Act, Colo. Rev. Stat. Ann. §§ 25.5-4-303.5 – 25.5-4-310.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

112.    Defendants violated the Colorado Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Colorado, as described herein.

113.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Colorado.

114.    The State of Colorado, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Colorado would not otherwise have paid.

115.    By reason of these payments, the State of Colorado has been damaged, and continues to be damaged, in a substantial amount.

**SIXTH COUNT– AGAINST ALL DEFENDANTS**
**For Violations of the Connecticut False Claims And Other Prohibited Acts Under State-Administered Health or Human Services Act ("Connecticut False Claims Act")**
**Conn. Gen. Stat. Ann. §§ 4-274-4-289.**

116.    This is a claim for treble damages and civil penalties under the Connecticut False Claims Act, Conn. Gen. Stat. Ann. §§ 4-274-4-289.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

117.    Defendants violated the Connecticut False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Connecticut, as described herein.

118.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Connecticut.

119.    The State of Connecticut, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Connecticut would not otherwise have paid.

120.    By reason of these payments, the State of Connecticut has been damaged, and continues to be damaged, in a substantial amount.

## SEVENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Delaware False Claims and Reporting Act
### Del. Code Ann. Tit. 6, §§ 1201 – 1211

121.    This is a claim for treble damages and civil penalties under the Delaware False Claims and Reporting Act, Del. Code Ann. Tit. 6, §§ 1201 – 1211.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

122.    Defendants violated the Delaware False Claims and Reporting Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Delaware, as described herein.

123.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Delaware.

124.    The State of Delaware, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Delaware would not otherwise have paid.

125.    By reason of these payments, the State of Delaware has been damaged, and continues to be damaged, in a substantial amount.

## EIGHTH COUNT– AGAINST ALL DEFENDANTS

- 35 -

**For Violations of the District of Columbia Medicaid Fraud Enforcement and Recovery Amendment Act of 2012**
**D.C. Code Ann. §§ 2-381.01 – 2-381.10**

126.    This is a claim for treble damages and civil penalties under the District of Columbia Medicaid Fraud Enforcement and Recovery Amendment Act, D.C. Code Ann. §§ 2-381.01 – 2-381.10.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

127.    Defendants violated the District of Columbia Medicaid Fraud Enforcement and Recovery Amendment Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the District of Columbia, as described herein.

128.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the District of Columbia.

129.    The District of Columbia, unaware of the false or fraudulent nature of these claims, paid such claims which the District of Columbia would not otherwise have paid.

130.    By reason of these payments, the District of Columbia has been damaged, and continues to be damaged, in a substantial amount.

**NINTH COUNT– AGAINST ALL DEFENDANTS**
**For Violations of the Florida False Claims Act**
**Fla. Stat. Ann. §§ 68.081 – 68.092**

131.    This is a claim for treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. Ann. §§ 68.081 – 68.092.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

132.    Defendants violated the Florida False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Florida as described herein.

133.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Florida.

134.    The State of Florida, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Florida would not otherwise have paid.

135.    By reason of these payments, the State of Florida has been damaged, and continues to be damaged, in a substantial amount.

**TENTH COUNT– AGAINST ALL DEFENDANTS**
**For Violations of the Georgia False Medicaid Claims Act**
**Ga. Code Ann. §§ 49-4-168 – 49-4-168.6**

136.    This is a claim for treble damages and civil penalties under Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168 – 49-4-168.6.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

137.    Defendants violated the Georgia State False Medicaid Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Georgia, as described herein.

138.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Georgia.

139.    The State of Georgia, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Georgia would not otherwise have paid.

140.    By reason of these payments, the State of Georgia has been damaged, and continues to be damaged, in a substantial amount.

## ELEVENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Hawaii False Claims Act for False Claims to the State
### Haw. Rev. Stat. §§ 661-21 – 661-31

141.    This is a claim for treble damages and civil penalties under the Hawaii False Claims Act for False Claims to the State, Haw. Rev. Stat. §§ 661-21 – 661-31.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

142.    Defendants violated the Hawaii False Claims Acts for False Claims to the State by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Hawaii, as described herein.

143.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Hawaii.

144.    The State of Hawaii, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Hawaii would not otherwise have paid.

145.    By reason of these payments, the State of Hawaii has been damaged, and continues to be damaged, in a substantial amount.

## TWELFTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Illinois False Claims Act
### 740 Ill. Comp. Stat. Ann. §§ 175/1 – 175/8

146.    This is a claim for treble damages and civil penalties under the Illinois False Claims Act, 740 Ill. Comp. Stat. Ann. §§ 175/1 – 175/8.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

147.    Defendants violated the Illinois False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Illinois, as described herein.

148.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Illinois.

149.    The State of Illinois, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Illinois would not otherwise have paid.

150.    By reason of these payments, the State of Illinois has been damaged, and continues to be damaged, in a substantial amount.

## THIRTEENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Indiana False Claims and Whistleblowers Protection Act
### Ind. Code Ann. §§ 5-11-5.5-1 – 5-11-5.5-18

151.    This is a claim for treble damages and civil penalties under the Indiana False Claims and Whistleblowers Protection Act, Ind. Code Ann. §§ 5-11-5.5-1 – 5-11-5.5-18.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

152.    Defendants violated the Indiana False Claims and Whistleblowers Protection Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Indiana, as described herein.

153.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Indiana.

154.    The State of Indiana, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Indiana would not otherwise have paid.

- 39 -

155.    By reason of these payments, the State of Indiana has been damaged, and continues to be damaged, in a substantial amount.

## FOURTEENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Iowa False Claims Act
### Iowa Code Ann. §§ 685.1 – 685.7

156.    This is a claim for treble damages and civil penalties under the Iowa False Claims Act, Iowa Code Ann. §§ 685.1- 685.7.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

157.    Defendants violated the Iowa False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Iowa, as described herein.

158.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Iowa.

159.    The State of Iowa, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Iowa would not otherwise have paid.

160.    By reason of these payments, the State of Iowa has been damaged, and continues to be damaged, in a substantial amount.

## FIFTEENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Louisiana Medical Assistance Programs Integrity Law
### La. Rev. Stat. §§ 437.1 – 440.16

161.    This is a claim for treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §§ 437.1 – 440.16. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

- 40 -

162.    Defendants violated the Louisiana Medical Assistance Programs Integrity Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Louisiana, as described herein.

163.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Louisiana.

164.    The State of Louisiana, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Louisiana would not otherwise have paid.

165.    By reason of these payments, the State of Louisiana has been damaged, and continues to be damaged, in a substantial amount.

### SIXTEENTH COUNT– AGAINST ALL DEFENDANTS
**For Violations of the Maryland False Health Claims Act**
**Md. Code Ann., Health-General §§ 8-101 – 8-111**

166.    This is a claim for treble damages and civil penalties under the Maryland False Health Claims Act, Md. Code Ann., Health-Gen. §§ 8-101 – 8-111.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

167.    Defendants violated the Maryland False Health Claims Act of 2010 by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Maryland, as described herein.

168.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Maryland.

169.    The State of Maryland, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Maryland would not otherwise have paid.

170.    By reason of these payments, the State of Maryland has been damaged, and continues to be damaged, in a substantial amount.

## SEVENTEENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Massachusetts False Claims Law
### Mass. Gen. Laws Ann. Ch. 12 §§ 5A – 5O

171.    This is a claim for treble damages and civil penalties under the Massachusetts False Claims Law, Mass. Gen. Laws Ann. Ch. 12, §§ 5A – 5O.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

172.    Defendants violated the Massachusetts False Claims Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the Commonwealth of Massachusetts, as described herein.

173.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth of Massachusetts.

174.    The Commonwealth of Massachusetts, unaware of the false or fraudulent nature of these claims, paid such claims which the Commonwealth of Massachusetts would not otherwise have paid.

175.    By reason of these payments, the Commonwealth of Massachusetts has been damaged, and continues to be damaged, in a substantial amount.

## EIGHTEENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Michigan Medicaid False Claims Act
### Mich. Comp. Laws Ann. §§ 400.601 – 400.615

176.    This is a claim for treble damages and civil penalties under the Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. §§ 400.601 – 400.615.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

177.    Defendants violated the Michigan Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Michigan, as described herein.

178.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Michigan.

179.    The State of Michigan, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Michigan would not otherwise have paid.

180.    By reason of these payments, the State of Michigan has been damaged, and continues to be damaged, in a substantial amount.

## NINETEENTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Minnesota False Claims Act
### Minn. Stat. Ann. §§ 15C.01 – 15C.16

181.    This is a claim for treble damages and civil penalties under the Minnesota False Claims Act, Minn. Stat. Ann. §§ 15C.01 – 15C.16.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

182.    Defendants violated the Minnesota False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Minnesota, as described herein.

183.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Minnesota.

184.    The State of Minnesota, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Minnesota would not otherwise have paid.

185.     By reason of these payments, the State of Minnesota has been damaged, and continues to be damaged, in a substantial amount.

## TWENTIETH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Montana False Claims Act
### Mont. Code Ann. §§ 17-8-401 – 17-8-416

186.     This is a claim for treble damages and civil penalties under Montana False Claims Act, Mont. Code Ann. §§ 17-8-401 – 17-8-416.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

187.     Defendants violated the Montana False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Montana, as described herein.

188.     As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Montana.

189.     The State of Montana, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Montana would not otherwise have paid.

190.     By reason of these payments, the State of Montana has been damaged, and continues to be damaged, in a substantial amount.

## TWENTY-FIRST COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Nevada Submission of False Claims to State or Local
### Government Act
### Nev. Rev. Stat. Ann. §§ 357.010 – 357.250

191.     This is a claim for treble damages and civil penalties under the Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. Ann. §§ 357.010 – 357.250.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

192.     Defendants violated the Nevada Submission of False Claims to State or Local Government Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Nevada, as described herein.

193.     As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Nevada.

194.     The State of Nevada, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Nevada would not otherwise have paid.

195.     By reason of these payments, the State of Nevada has been damaged, and continues to be damaged, in a substantial amount.

### TWENTY-SECOND COUNT– AGAINST ALL DEFENDANTS
**For Violations of the New Hampshire Medicaid Fraud and False Claims Law**
**N.H. REV. STAT. ANN. §§ 167:61-B – 167:61-E**

196.     This is a claim for treble damages and civil penalties under the New Hampshire Medicaid Fraud and False Claims Law, N.H. Rev. Stat. Ann. §§ 167:61-b – 167:61-E.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

197.     Defendants violated the New Hampshire Medicaid Fraud and False Claims Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New Hampshire, as described herein.

198.     As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New Hampshire.

199.     The State of New Hampshire, unaware of the false or fraudulent nature of these claims, paid such claims which the State of New Hampshire would not otherwise have paid.

- 45 -

200.    By reason of these payments, the State of New Hampshire has been damaged, and continues to be damaged, in a substantial amount.

### TWENTY-THIRD COUNT– AGAINST ALL DEFENDANTS
**For Violations of the New Jersey False Claims Act**
**N.J. Stat. Ann. §§ 2A:32C-1 – 2A:32C-18**

201.    This is a claim for treble damages and civil penalties under the New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32C-1 – 2A:32C-18.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

202.    Defendants violated the New Jersey False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New Jersey, as described herein.

203.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New Jersey.

204.    The State of New Jersey, unaware of the false or fraudulent nature of these claims, paid such claims which the State of New Jersey would not otherwise have paid.

205.    By reason of these payments, the State of New Jersey has been damaged, and continues to be damaged, in a substantial amount.

### TWENTY-FOURTH COUNT– AGAINST ALL DEFENDANTS
**For Violations of the New Mexico Medicaid False Claims Act**
**N.M. Stat. Ann. §§ 27-14-1 – 27-14-15**

206.    This is a claim for treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §§ 27-14-1 – 27-14-15.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

207.    Defendants violated the New Mexico Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New Mexico, as described herein.

208.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New Mexico.

209.    The State of New Mexico, unaware of the false or fraudulent nature of these claims, paid such claims which the State of New Mexico would not otherwise have paid.

210.    By reason of these payments, the State of New Mexico has been damaged, and continues to be damaged, in a substantial amount.

## TWENTY-FIFTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the New Mexico Fraud Against Taxpayers Act
### N.M. Stat. Ann. §§ 44-9-1 – 44-9-14.

211.    This is a claim for treble damages and civil penalties under the New Mexico Fraud Against Taxpayers False Claims Act, N.M. Stat. Ann. §§ 44-9-1 – 44-9-14.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

212.    Defendants violated the New Mexico Fraud Against Taxpayers False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New Mexico, as described herein.

213.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New Mexico.

214.    The State of New Mexico, unaware of the false or fraudulent nature of these claims, paid such claims which the State of New Mexico would not otherwise have paid.

215.    By reason of these payments, the State of New Mexico has been damaged, and continues to be damaged, in a substantial amount.

### TWENTY-SIXTH COUNT– AGAINST ALL DEFENDANTS
**For Violations of the New York False Claims Act**
**N.Y. Fin. Law §§ 187 – 194**

216.    This is a claim for treble damages and civil penalties under the New York False Claims Act, N.Y. Fin. Law §§ 187 – 194.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

217.    Defendants violated the New York False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of New York, as described herein.

218.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New York.

219.    The State of New York, unaware of the false or fraudulent nature of these claims, paid such claims which the State of New York would not otherwise have paid.

220.    By reason of these payments, the State of New York has been damaged, and continues to be damaged, in a substantial amount.

### TWENTY-SEVENTH COUNT– AGAINST ALL DEFENDANTS
**For Violations of the North Carolina False Claims Act**
**N.C. Gen. Stat. Ann. §§ 1-605 – 1-618**

221.    This is a claim for treble damages and civil penalties under the North Carolina False Claims Act, N.C. Gen. Stat. Ann. §§ 1-605 – 1-618.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

222.    Defendants violated the North Carolina False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of North Carolina, as described herein.

223.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of North Carolina.

224.    The State of North Carolina, unaware of the false or fraudulent nature of these claims, paid such claims which the State of North Carolina would not otherwise have paid.

225.    By reason of these payments, the State of North Carolina has been damaged, and continues to be damaged, in a substantial amount.

### TWENTY-EIGHTH COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Oklahoma Medicaid False Claims Act
### Okla. Stat. Ann. Tit. 63, §§ 5053 – 5054

226.    This is a claim for treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. Tit. 63, §§ 5053 – 5054.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

227.    Defendants violated the Oklahoma Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Oklahoma, as described herein.

228.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Oklahoma.

229.    The State of Oklahoma, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Oklahoma would not otherwise have paid.

230.    By reason of these payments, the State of Oklahoma has been damaged, and continues to be damaged, in a substantial amount.

### TWENTY-NINTH COUNT– AGAINST ALL DEFENDANTS
#### For Violations of the Rhode Island State False Claims Act
#### R.I. Gen. Laws Ann. §§ 9-1.1-1 – 9-1.1-9

231.    This is a claim for treble damages and civil penalties under the Rhode Island State False Claims Act, R.I. Gen. Laws Ann. §§ 9-1.1-1 – 9-1.1-9.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

232.    Defendants violated the Rhode Island State False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Rhode Island, as described herein.

233.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Rhode Island.

234.    The State of Rhode Island, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Rhode Island would not otherwise have paid.

235.    By reason of these payments, the State of Rhode Island has been damaged, and continues to be damaged, in a substantial amount.

### THIRTIETH COUNT– AGAINST ALL DEFENDANTS
#### For Violations of the Tennessee False Claims Act
#### Tenn. Code Ann. §§ 4-18-101 – 4-18-108 And
#### For Violations of the Tennessee Medicaid False Claims Act
#### Tenn. Code Ann. §§ 71-5-181 – 71-5-185

236.    This is a claim for treble damages and civil penalties under the Tennessee False Claims Act, Tenn. Code Ann. §§ 4-18-101 – 4-18-108 and the Tennessee Medicaid False Claims

- 50 -

Act, Tenn. Code. Ann. §§ 71-5-181 – 71-5-185.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

237.    Defendants violated the Tennessee False Claims Act and the Tennessee Medicaid False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Tennessee, as described herein.

238.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Tennessee.

239.    The State of Tennessee, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Tennessee would not otherwise have paid.

240.    By reason of these payments, the State of Tennessee has been damaged, and continues to be damaged, in a substantial amount.

**THIRTY-FIRST COUNT– AGAINST ALL DEFENDANTS**
**For Violations of the Texas Medicaid Fraud Prevention Law**
**Tex. Hum. Res. Code Ann. §§ 36.001 – 36.132**

241.    This is a claim for treble damages and civil penalties under the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. §§ 36.001 – 36.132.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

242.    Defendants violated the Texas Medicaid Fraud Prevention Law by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Texas, as described herein.

243.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Texas.

244.    The State of Texas, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Texas would not otherwise have paid.

245.    By reason of these payments, the State of Texas has been damaged, and continues to be damaged, in a substantial amount.

## THIRTY-SECOND COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Virginia Fraud Against Taxpayers Act
### Va. Code Ann. §§ 8.01-216.1 – 8.01-216.19

246.    This is a claim for treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 – 8.01-216.19.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

247.    Defendants violated the Virginia Fraud Against Taxpayers Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the Commonwealth of Virginia, as described herein.

248.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth of Virginia.

249.    The Commonwealth of Virginia, unaware of the false or fraudulent nature of these claims, paid such claims which the Commonwealth of Virginia would not otherwise have paid.

250.    By reason of these payments, the Commonwealth of Virginia has been damaged, and continues to be damaged, in a substantial amount.

## THIRTY-THIRD COUNT– AGAINST ALL DEFENDANTS
### For Violations of the Washington Medicaid Fraud False Claims Act
### Wash. Rev. Code Ann. §§ 74.66.005 – 74.66.130

251.    This is a claim for treble damages and civil penalties under the Washington Medicaid Fraud False Claims Act, Wash. Rev. Code Ann. §§ 74.66.005 – 74.66.130.  Relator re-alleges and incorporates the allegations in the preceding paragraphs as if set forth fully herein.

252.    Defendants violated the Washington Medicaid Fraud False Claims Act by engaging in the fraudulent and illegal practices described herein, including knowingly causing false claims to be presented to the State of Washington, as described herein.

253.    As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Washington.

254.    The State of Washington, unaware of the false or fraudulent nature of these claims, paid such claims which the State of Washington would not otherwise have paid.

255.    By reason of these payments, the State of Washington has been damaged, and continues to be damaged, in a substantial amount.

## PRAYER FOR RELIEF

WHEREFORE, Relator requests that judgment be entered against Defendants as follows:

(a) treble the Government's damages in an amount determined at trial, plus the maximum statutorily-allowed penalty for each false claim submitted in violation of the FCA or State statute set forth above;

(b) the applicable administrative civil penalties for each violation of the AKS and State-equivalent statute, as well as an assessment of not more than three times the amount of remuneration offered, paid, solicited or received, without regard to whether a portion of that amount was offered, paid or received for a lawful purpose;

(c) an award of costs and the maximum Relator award allowed pursuant to the FCA and

State statutes set forth above; and

(d) such further relief as is proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Relator hereby demands trial by jury.

Dated this the 20th day of July, 2017.

_____

**QUANTUM LEGAL LLC**
RICHARD J. BURKE (BAR NO. (BAR NO.
6255504)
513 Central Avenue
Suite 300
Highland Park, Illinois 60035
Telephone:  847-433-4500
Facsimile:   847- 433-2500

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
W. DANIEL "DEE" MILES, III (*pro hac vice*
*forthcoming*)
C. LANCE GOULD (*pro hac vice forthcoming*)
ALISON D. HAWTHORNE (*pro hac vice*
*forthcoming*)
272 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama 36104
Telephone:  334-269-2343
Facsimile:   334-954-7555

*Attorneys for Plaintiff-Relator*

**QUANTUM LEGAL LLC**
RICHARD J. BURKE (BAR NO. 6255504)
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Telephone:  847-433-4500
Facsimile:  847- 433-2500

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
W. DANIEL "DEE" MILES, III (*pro hac vice forthcoming*)
C. LANCE GOULD (*pro hac vice forthcoming*)
ALISON D. HAWTHORNE *(pro hac vice forthcoming)*
272 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama 36104
Telephone:  334-269-2343
Facsimile:  334-954-7555

*Attorneys for Plaintiff-Relator*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, and STATE OF WASHINGTON** *ex rel.* **CIMZNHCA, LLC,**<br><br>         **Plaintiffs,**<br><br>**v.**<br><br>**UCB, INC.; RXC ACQUISITION COMPANY (DBA RX CROSSROADS); OMNICARE, INC.; AND CVS HEALTH CORPORATION,**<br><br>         **Defendants.** | **Civil Action No. 17-cv-765-SMY-DGW**<br><br>**CERTIFICATE OF SERVICE**<br><br>**Filed Under Seal Pursuant to 31 U.S.C. § 3730(b)(2)** |

## <u>CERTIFICATE OF SERVICE</u>

Richard J. Burke hereby certifies, pursuant to 28 U.S.C. 1746, as follows:

1.   I am attorney at law and co-counsel for Relator in the above captioned matter.

2.   On or about the 17th day of July, 2017, I served via certified United States Mail a

   copy of the Complaint and Initial Disclosure Statement on the following:

- 56 -

The Honorable Jeff Sessions
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

The Honorable Donald S. Boyce, Jr.
United States Attorney
Southern District of Illinois
9 Executive Drive
Fairview Heights, Illinois 62208

Xavier Becerra
Attorney General
1300 "I" Street
Sacramento, California 95814

Cynthia H. Coffman
Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, Colorado 80203

George Jepson
Attorney General
55 Elm Street
Hartford, Connecticut 06106

Matthew Denn
Attorney General
Delaware Department of Justice
Carvel State Building
820 N. French Street
Wilmington, Delaware 19801

Karl A. Racine
Attorney General
441 4th Street, NW
Washington, DC 20001

Pam Bondi
Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050

Jeff Atwater
Florida Chief Financial Officer
Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399-0301

Christopher M. Carr
Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334

Douglas Chin
Attorney General
425 Queen Street
Honolulu, Hawaii 96813

Lisa Madigan
Attorney General
100 West Randolph Street
Chicago, Illinois 60601

Curtis T. Hill, Jr.
Attorney General
Indiana Government Center South
302 W. Washington Street, 5th Floor
Indianapolis, Indiana 46204

Lori Torres
Inspector General
Office of the Inspector General
315 West Ohio Street, Room 104
Indianapolis, Indiana 46202

Tom Miller
Attorney General
Hoover State Office Building
1305 E. Walnut Street
Des Moines, Iowa 50319

Jeff Landry
Attorney General
1885 North Third Street
Baton Rouge, Louisiana 70802

Brian E. Frosh
Attorney General
200 St. Paul Place
Baltimore, Maryland 21202

Maura Healey
Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1518

William D. "Bill" Schuette
Attorney General
G. Mennen Williams Building, 7th Floor
525 W. Ottawa Street
Lansing, Michigan 48909

Lori Swanson
Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101

Tim Fox
Attorney General
Justice Building
Third Floor
215 North Sanders
Helena, Montana 59260-1401

Adam Paul Laxalt
Attorney General
100 North Carson Street
Carson City, Nevada 89701

Gordon J. MacDonald
Attorney General
NH Department of Justice
33 Capitol Street
Concord, New Hampshire 03301

Christopher Porrino
Attorney General
RJ Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08625-0080

Hector Balderas
Attorney General
408 Galisteo Street
Villagra Building
Santa Fe, New Mexico 87501

New Mexico Human Services Department
Medical Assistance Division
P.O. Box 2348
Santa Fe, New Mexico 87504-2348

Eric Schneiderman
Attorney General
The Capitol
Albany, New York 12224-0341

Josh Stein
Attorney General
9001 Mail Service Center
Raleigh, North Carolina 27699-9001

Mike Hunter
Attorney General
313 NE 21st Street
Oklahoma, Oklahoma 73105

Peter F. Kilmartin
Attorney General
150 South Main Street
Providence, Rhode Island 02903

Herbert H. Slatery, III
Attorney General
500 Charlette Avenue
Nashville, Tennessee 37243

Ken Paxton
Attorney General
300 W. 15th Street
Austin, Texas 78701

Mark R. Herring
Attorney General
202 N. Ninth Street
Richmond, Virginia 23219

Robert Watson Ferguson
Attorney General
1125 Washington Street SE
Olympia, Washington 98504

     I certify under penalty of perjury that the foregoing is true and correct.

Executed on this the ___20th___ day of ____July____, 2017.

_____

**QUANTUM LEGAL LLC**
RICHARD J. BURKE (BAR NO. (BAR NO. 6255504)
513 Central Avenue
Suite 300
Highland Park, Illinois 60035
Telephone:  847-433-4500
Facsimile:  847- 433-250