IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel. CIMZNHCA, LLC, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 17-CV-765 –SMY-MAB |
| vs. | ) ) |
| UCB, INC., RXC ACQUISITION COMPANY d/b/a RX CROSSROADS, OMNICARE, INC., and CVS HEALTH CORPORATION, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Relator CIMZNHCA, LLC ("CIMZNHCA") filed this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3727 *et seq.*, against Defendants UCB, Inc. ("UCB"), RXC Acquisition Company d/b/a RX Crossroads, Omnicare, Inc. and CVS Health Corporation (collectively referred to as "RXC"). Now pending before the Court is the Government's Motion to Dismiss (Doc. 63). CIMZNHCA filed a Response (Doc. 66). The Court has considered the parties' written submissions and conducted an evidentiary hearing on March 29, 2019.

## Background

CIMZNHCA, LLC is a limited liability holding company of Venari Partners, LLC d/b/a National Health Care Analysis Group ("NHCA Group"). NHCA Group is the relator in eleven *qui tam* actions filed nationwide, asserting violations of the Anti-Kickback Statute, 42 U.S.C. §

1320a-7b(b) (the "AKS") by various pharmaceutical defendants.[1] In the instant case, CIMZNHCA claims that since 2011, UCB and RXC, through the implementation of two different schemes, have provided remuneration in the form of free nursing and reimbursement support services to prescribing providers to induce them to recommend UCB's drug, Cimzia, to patients. CIMZNHCA alleges that as a result of these schemes, pharmacies have submitted claims to Medicare and Medicaid that are tainted by kickbacks, causing these programs to pay tens of millions of dollars in improper reimbursements. CIMZNHCA further alleges that the schemes undermine the independent decision making of providers; providers do not prescribe Cimzia because they believe the drug will help their patients, but because UCB and RXC actively and improperly pursue and entice them.

The Government has declined to intervene and now moves to dismiss the case under 31 U.S.C. § 3730(c)(2)(A) on the bases the allegations lack merit and continued prosecution of this case will be costly and contrary to governmental prerogatives. CIMZNHCA argues that the Government's decision to dismiss is arbitrary and capricious and unrelated to any rational governmental interest.

## Discussion

The False Claims Act ("FCA") prohibits the submission of false and fraudulent claims to the Government and authorizes private citizens to enforce its provisions. 31 U.S.C. § 3729(a),

---

[1] These cases include: *U.S. ex rel. Carle, et al. v. Otsuka Holdings Co., et al.*, No. 17-cv-966 (N.D. Ill.); *U.S. ex rel. SMSPF, LLC v. EMD Serono, Inc., et al.*, No. 16-cv-5594 (E.D. Pa.); *U.S. ex rel. SAPF, LLC, et al. v. Amgen, Inc., et al.*, No. 16-cv-5203 (E.D. Pa.); *U.S. ex rel. NHCA-TEV, LLC v. Teva Pharm., et al.*, No. 17-cv-2040 (E.D. Pa.); *U.S. ex rel. SMSF, LLC, et al. v. Biogen Inc., et al.*, No. 1:16-cv-11379 (D. Mass.); *U.S. ex rel. SCEF, LLC v. Astra Zeneca PLC, et al.*, No. 17-cv-1328 (W.D. Wash.); *U.S. ex rel. Miller, et al. v. AbbVie, Inc.*, No. 3:16-cv-2111 (N.D. Tex.); *U.S. ex rel. Health Choice Group, LLC. v. Bayer Corp., et al.*, No. 5:17-cv-126 (E.D. Tex.); *U.S. ex rel. Health Choice All., LLC v. Eli Lilly & Co., et al.*, No. 5:17-cv-123 (E.D. Tex.); *U.S. ex rel. Health Choice Advocates, LLC v. Gilead, et al.*, No. 5:17-cv-121 (E.D. Tex.); and *U.S. ex rel. Doe and APBQR, LLC v. Sanofi-Aventis U.S. LLC, et al.*, No. 16-5107 (S.D.N.Y.). Five of these actions have been dismissed, and six are pending.

(b)(1); *see Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 912 (7th Cir. 2009). To pursue an action under the FCA, a relator must file its Complaint under seal for at least sixty days to give the Government an opportunity to investigate the claim and to determine whether to intervene. 31 U.S.C. § 3730(b)(2). The Government retains significant control over a *qui tam* action even where it declines to intervene. *See Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749, 753–54 (5th Cir. 2001) (en banc); *Swift v. U.S.,* 318 F.3d 250, 253 (D.C. Cir. 2003); *United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.,* 151 F.3d 1139, 1145 (9th Cir. 1998). And, under § 3730(c)(2)(A), "the government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A).

Section 3730(c)(2)(A) does not create a particular standard for dismissal and courts are split as to the appropriate standard to be applied. The D.C. Circuit Court of Appeals has held that § 3730(c)(2)(A) "give[s] the government an unfettered right to dismiss an action," rendering the government's decision to dismiss essentially "unreviewable." *Swift,* 318 F.3d at 252. In its view, the purpose of the hearing referred to in the statute is to merely give the relator an opportunity to convince the government not to dismiss the case, and that the statute does not permit the judge to consider the merits of the government's motion. *Id.* at 253. The Fifth and Eighth Circuits are in accord. *See Riley,* 252 F.3d at 753; *U.S. ex rel. Rodgers v. Arkansas*, 154 F.3d 865, 868 (8th Cir. 1998).

By contrast, the Ninth and Tenth Circuits apply a "two-step analysis ... to test the [government's] justification for dismissal: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose. If the United States

satisfies the two-step test, the burden switches to the relator to demonstrate that the dismissal is fraudulent, arbitrary and capricious, or illegal." *United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.,* 151 F.3d 1139, 1145 (9th Cir. 1998); *Ridenour v. Kaiser–Hill Co., L.L.C.,* 397 F.3d 925, 940 (10th Cir. 2005). Under the *Sequoia Orange* standard, "[a] hearing is appropriate 'if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary or improper considerations.'" *Id*. (quoting S. REP. NO. 99-345, at 26 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291).

The Seventh Circuit has not adopted a standard for dismissal under § 3730(c)(2)(A). However, the *Sequoia Orange* standard is consistent with a well-established principle of statutory construction: "[O]ne of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . ..'" *Corley v. United States*, 556 U.S. 303, 314 (2009), (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). At the same time, it is appropriately deferential to the Government's prosecutorial authority. As is noted in *United States ex rel. SMSPF, LLC, et al. v. EMD Serono, Inc.*, *et al.*, No. 16-5594 (E.D. Pa. April 3, 2019), cited by the Government in this case:

> The rational relationship test strikes a balance among the branches of government. It does not give unlimited power to the Executive to dismiss a legitimate action the Legislature created. Nor does it give the Judicial Branch unrestrained power to stop the Executive from acting to dismiss an action in the government's interest. Requiring the Executive to give a reason for a decision to dismiss a qui tam action the Legislature intended to be pursued is consistent with the notion of independent, co-equal branches of government.

*Id. at p. 8*.

On the other hand, the *Swift* standard renders the hearing specifically provided for in the statute superfluous and belies the role of the judiciary in ensuring constitutional checks and balances. In providing the relator an opportunity for a hearing on the Government's motion to

dismiss, did Congress intend for courts to be relegated to simple providing a venue, hosting the parties, and sitting idly by while the relator pleads its case to the Government (something the relator can do outside the courtroom and without the expenditure of judicial resources)? Surely not. As the Ninth Circuit reasoned in *Sequoia Orange*, courts should conduct a limited judicial review to ensure the Government's decision to dismiss is not fraudulent, arbitrary or an abuse of power. This Court finds the reasoning of the Ninth and Tenth Circuits persuasive and rejects *Swift*.

Here, the Government maintains dismissal is rationally related to its legitimate interest in avoiding the expenditure of substantial resources on a case it believes to be without merit and contrary to important policy prerogatives of the federal government's healthcare programs. It asserts that it will incur substantial costs in monitoring the litigation and responding to discovery requests, while CIMZNHCA's "sweeping allegations" lack adequate support and are unlikely to yield a recovery sufficient to justify the significant costs and burdens that the Government will incur if this case proceeds. The Government claims to have reached this conclusion after an extensive investigation.

Generally, the Government has a valid interest in avoiding litigation costs, particularly in cases it deems lacking in factual and legal support. *See Sequoia Orange Co.,* 151 F.3d at 1146. While the Government suggests it need only identify such an interest to satisfy the *Sequoia Orange* standard, the Court's inquiry does not end there. For the Government's stated purpose to be valid and for there to be a rational relationship between it and the dismissal, its decision to dismiss must have been based on a minimally adequate investigation, including a meaningful cost-benefit analysis. The relator argues that the Government's decision to dismiss this case is arbitrary because it failed to fully investigate the allegations against the specific defendants in this case, versus conducting a general collective investigation the eleven cases filed by the relator against

various defendants nationwide and failed to conduct a cost-benefit analysis to support its concerns, including an assessment of the potential proceeds from the lawsuit. The Court agrees.

During the evidentiary hearing, the Government acknowledged that, for the most part, it collectively investigated the eleven *qui tam* cases filed by the relator (Doc. 76, at p. 39). As it relates to this specific case, the Government reviewed the Complaint and disclosure materials attached to the Complaint. *Id.* at p. 28. It did not review any additional materials from the relator relevant to this case. *Id*. at p. 29. Nor did the Government effort a cost-benefit analysis; it did not assess or analyze the costs it would likely incur versus the potential recovery that would flow to the Government if this case were to proceed. *Id*. at pp. 34-35, 39, and 43. This falls short of a minimally adequate investigation to support the claimed governmental purpose.

The Court also finds no rational relationship between the Government's expressed policy interest in the enforcement prerogatives of its healthcare programs and the dismissal of this case. The relator alleges the in-kind remuneration the defendants provided to physicians was intended to skew their decision making and to incentivize them to prescribe Cimzia rather than competitors' medications. The Government's contention that these allegations – which they acknowledge assert a classic violation of the AKS – "conflict with important policy and enforcement prerogatives of the Government's healthcare programs" (Doc. 64, p.15) is curious at best.

It is worth noting that the Government devoted a significant portion of its briefing – 6 ½ pages and all exhibits – to deriding the relator's business model and litigation activities. And, during the hearing, while asserting the Government's decision to dismiss was not based on its disapproval of the relator, its counsel maintained that disapproval of "professional relators" is a valid governmental purpose for dismissal:

> Q: Let me ask you this: If the Court in fact applies the Sequoia Orange standard, do you believe that the Government in this case has a valid purpose, or that the

> Government has a valid purpose in any case, in dismissing FCA cases in which they take issue or disapprove of the Relator? In other words, for instance, disapprove of the Relator or -- as, as you have termed the Relator in this case, professional relators -- in terms of their business model or how they conduct themselves? In other words, do you believe the Government has a valid purpose in dismissing these cases if they don't agree with the Relator or if they disapprove of the Relator?
> A: Yes. Yes, I do.

(Doc. 76, p. 49). Under the circumstances, one could reasonably conclude that the proffered reasons for the decision to dismiss are pretextual and the Government's true motivation is animus towards the relator.

For the foregoing reasons, this Court finds that the Government's decision to dismiss this action is arbitrary and capricious, and as such, not rationally related to a valid governmental purpose. The Government's Motion is therefore **DENIED**.

**IT IS SO ORDERED.**

**DATED: April 15, 2019**

**STACI M. YANDLE**
**United States District Judge**