IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. ex rel. CIMZNHCA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UCB, INC.; RXC ACQUISITION COMPANY d/b/a RX CROSSROADS; OMNICARE, INC.; and CVS HEALTH CORPORATION,<br><br>Defendants. | Case No.: 3:17-cv-00765-SMY-DGW |

**PLAINTIFF-RELATOR CIMZNHCA, LLC'S
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

CIMZNHCA, LLC's ("Relator") First Amended Complaint ("FAC") fully outlines allegations about how Defendants concocted a scheme to introduce additional incentives to providers to recommend its drug Cimzia to patients rather than promoting and marketing its drug based on patient outcomes and efficacy, which resulted in violations of the Anti-Kickback Statute ("AKS") and Federal and State False Claims Acts. UCB, Inc. ("UCB"), RX Crossroads, Omnicare, Inc. ("Omnicare"), and CVS Health Corporation ("CVS") (collectively "Defendants") filed separate motions to dismiss the FAC (Doc. 105, Doc. 106, Doc. 107, and Doc. 108). Many of the issues in Defendants' separate motions overlap. Thus, rather than unnecessarily rehash the same issues in multiple filings, Relator fully addresses all Defendants' arguments in this Opposition. For the reasons outlined herein, each of the Defendants' motions to dismiss should be denied.

**I.    FACTUAL BACKGROUND**

Relator's FAC details the claims against Defendants for their violations of the False Claims Act and the Anti-Kickback Statute concerning the prescription drug Cimzia. The violations center around two kickback schemes: (1) providing in-kind remuneration in the form of free reimbursement support services to prescribers who write prescriptions for Cimizia over its competitors; and (2) providing in-kind remuneration in the form of free nurse services to prescribers who write prescriptions for Cimzia over its competitors. Defendants were fully aware that the free nurse services and free reimbursement support services would present a tangible value to the providers. FAC ¶ 100.

In the first of these schemes, Defendants offered free reimbursement support services through RX Crossroads, including time-consuming preapprovals and appeals, for prescribers who wrote prescriptions for Cimzia. FAC ¶¶ 86-99. This support-service scheme involves the provision of tangible, in-kind remuneration that greatly reduced, and in some instances eliminated, prescribers' administrative costs related to prescribing Cimzia. *Id.* The FAC also outlines Defendants' second kickback scheme: providing nurses to prescribers in exchange for a recommendation or prescription of Cimzia. FAC at ¶¶ 73-85. Certified Nurse Educators are recognized as specialty clinicians with particular training, education and experience in disease education and care. *Id.* Not surprisingly, Nurse Educators are in particular demand for providers who care for disease patients. *Id.* In the most straightforward terms, Defendants sought to incentivize providers to choose the UCB-manufactured drug Cimzia over competitors' drugs by providing free nursing services. Again, in doing so, the physician saves the cost of answering patients' questions, either himself/herself or his/her staff and saves the cost of instructing the patient on the proper way to administer the drug. The nurse educators provided by Defendants were successful in saving prescribers time, money and resources and, in many instances, resulted

in receiving higher reimbursement rates associated with certain disease care metrics. *Id.* Defendants could not pay the physicians' staff directly (a clear kickback), so it supplies the staff instead.

These two schemes resulted in the submission of numerous false claims to government healthcare programs including Medicare, Medicaid, and TRICARE. FAC ¶¶ 104, 108, 115-122. As Defendants profited from the illegal schemes described herein, Medicare and Medicaid and other government health care programs were made to bear the costs. From 2011 to the present, Defendants' actions knowingly have caused pharmacies, Part D sponsors, Fiscal Intermediaries and others to submit millions of dollars in claims to Medicare and Medicaid for UCB's Cimzia that were provided to beneficiaries as a result of Defendants' illegal quid pro quo arrangements. FAC ¶ 116.

## II. PROCEDURAL HISTORY

Relator filed this case on June 20, 2017 under seal. Subsequently, the United States chose not to intervene on December 14, 2017. The Government moved to dismiss this action on December 17, 2018. This Court found the Government's motion to dismiss to be arbitrary and denied the motion on April 15, 2019. Relator filed the First Amended Complaint on May 14, 2019. Defendants' filed their motions to dismiss on June 25, 2019.

Since then, the Government filed its notice of appeal to the United States Court of Appeals for the Seventh Circuit of the denial of its motion to dismiss on July 5, 2019. On July 9, 2019 the Seventh Circuit instructed the Government to explain why it has jurisdiction over the appeal, and the Government submitted a jurisdictional memorandum on July 22, 2019. On July 26, 2019, Magistrate Judge Mark Beatty instructed the Parties to brief the issue of whether the Government's

appeal prevents issue of a scheduling order and start of discovery in this Court. These briefs are due on August 9, 2019.

## III. LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When deciding a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007).

Claims brought under the FCA must comply with Rule 9(b), which requires pleading with particularity in cases alleging fraud. Rule 9(b) provides that in order to state a claim for fraud the plaintiff must state with particularity the circumstances constituting the fraud. *See* FED. R. CIV. P. 9(b). However, malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id.*

## IV. ARGUMENT

Defendants make multiple arguments in an attempt to avoid the allegations outlined in the FAC. They assert that Relator has failed to adequately plead its FCA claims and that the first-to-file rule and public disclosure bar prevent Relator from bringing these claims. Defendants' arguments fail because Relator conducted an independent investigation into these claims, has independent knowledge of the violations, and laid out the violations in more than sufficient detail.

### A. The First-to-File and Public-Disclosure Bars do not Apply to Relator's Allegations in the FAC.

Defendants argue that Relator's allegations are synonymous with information already publicly disclosed and/or that Relator is not the first to file these allegations against Defendants. The first-to-file bar provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). In defining "related," the Seventh Circuit follows the standard given in *United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*, 606 F.3d 361 (7th Cir. 2010):

> [W]e read "related action based on the facts underlying the pending action" to specify only the materially similar situations that objectively reasonable readings of the original complaint, or investigations launched in direct consequence of that complaint, would have revealed....

*Id*. at 365. There are essentially two ways for the later-filed action to trip on the first-to-file bar: (1) the actions are related based on materially similar situations discernible from the original complaint itself; or (2) the actions are related if an investigation launched because of the first would have revealed information about the second. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834 (7th Cir. 2018) (citing *United States ex rel. Berkowitz v. Automation Aids*, No. 13 C 08185, 2017 WL 1036575, at *10 (N.D. Ill. Mar. 16, 2017), aff'd sub nom.).

Similarly, the public-disclosure bar prevents a relator from bringing suit if the complaint is based upon information that has already been publicly disclosed. Determining whether to apply the public-disclosure bar requires the court to complete a three-step inquiry. First, we examine whether the relator's allegations have been "publicly disclosed." *Cause of Action*, 815 F.3d at 274 (citation omitted). If so, we next ask whether the lawsuit is "based upon," i.e., "substantially similar to" the publicly disclosed allegations. *Id*. (citation omitted). "If it is, the public-disclosure bar precludes the action unless 'the relator is an original source of the information upon which the

lawsuit is based.'" *Id*. (citation and brackets omitted). "The relator bears the burden of proof at each step of the analysis." *Id*; *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 718 (7th Cir. 2017), cert. denied, 138 S. Ct. 1284, 200 L. Ed. 2d 470 (2018).

Defendants' arguments that the first-to-file and public disclosure bar require dismissal of this action miss the mark. Relator's allegations in this case are substantially different than the disclosures and earlier filed cases to which Defendants try to compare these allegations. Defendants argue that the false claims and allegations at issue before this Court were previously disclosed as the subject of other lawsuits. However, the lawsuits relied upon by Defendants involve different programs, different allegations, and different claims submissions. For example, the lawsuit filed in the Eastern District of Pennsylvania against Defendants specifically concerned: (1) providing free drug samples that could then be billed to Medicare so that physicians could then profit off of drugs they never purchased; (2) paying physicians and staff for "speeches" about the drug and in the form of vacations; and (3) marketing the spread. *See United States ex rel. Doe v. UCB, et al.*, 2:10-cv-07433, Dkt. No. 1 (E.D. Pa. Dec. 21, 2010).

Likewise, the *Serono* case against RX Crossroads, heavily relied upon by Defendants, involved entirely different drugs and relationships with different drug manufactures. *See U.S. ex rel. Panzey Belgium Harris v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 486 (E.D. Pa. 2019). The allegations in this case concerning how these Defendants implemented, marketed, and profited from providing illegal kickbacks to prescribers in exchange for prescriptions of Cimzia are not part of any prior lawsuit. Defendants also group together multiple other *qui tam* suits referenced in the Government's motion to dismiss this case, which were denied, as fodder for their public disclosure arguments. *See* UCB MTD at 7-8; see also Doc. 83 at 2 n.1. Defendants argue that each of these cases is "related" to this case, because they all allege that pharmaceutical companies

violated the FCA and AKS by providing nurse educator and reimbursement support services through commercial outsourcing vendors. Again, these cases involve different defendants, different drugs, and even different schemes. All of these cases also involve completely different informants and completely different data. Defendants accuse Relator of generalizing allegations, and as detailed below that argument is incorrect, yet Defendants are attempting generalize allegations and ignore the specific, material components of these cases that make them incredibly different.

Finally, Defendants suggest that the allegations in the FAC were publicly disclosed through various outlets such as websites and reports. This allegation is based solely on cherry-picking certain portions of the FAC and ignoring the full allegations. Relator's use of certain publicly available information to provide background and substance to the allegations of fraud does not equate to public disclosure of the specific violations alleged against Defendants. For example, a website mention of nurse services provided by Defendants fails to disclose any information about how these services were marketed to physicians, how they were used as a kickback, and the value that these services provided to physician's offices in exchange for Cimzia prescriptions. Reading the FAC as a whole demonstrates that these claims are not based on any publicly disclosed information but based on the confidential and independent information obtained by the Relator during its investigation.

**B. Relator is an Original Source of Information.**

Should this Court determine that the allegations are based on publicly disclosed information, Defendants' motions should still be denied because Relator is an original source of the information alleged. The original-source exception permits jurisdiction over an FCA action even if the relator's lawsuit is based upon publicly disclosed information provided that the relator

7

is "an original source of the information." § 3730(e)(4)(A); *see also Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 916 (7th Cir. 2009). While original sources should be independently aware of some essential piece of information, they need not have direct knowledge of all of the vital ingredients in a fraudulent transaction. United *States ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 660 (N.D. Ill. 2015).

Relator's information does not "derive from" or depend upon any public disclosure, and the allegations are not second-hand evidence. Defendants' incorrectly argue that Relator makes a conclusory statement about its independent knowledge, but in fact, Relator provides details of its independent knowledge and details about its investigation into the allegations. FAC ¶¶ 63-65. Relator obtained independent, original information about the schemes and claims in this case and utilized private data analytics and analysis that is independent and original to Relator. Although Relator maintains that these allegations are not based upon any public disclosure, Defendants' motions to dismiss should still be denied because Relator is an independent and original source of the information in the FAC.

**C. Allegations in the FAC Satisfy Federal Rule of Civil Procedure 9(b).**

The FAC contains 62 pages setting forth the FCA and AKS allegations against Defendants in more than sufficient detail. Claims brought under the FCA must comply with Rule 9(b), which requires pleading with particularity in cases alleging fraud. Rule 9(b) provides that in order to state a claim for fraud the plaintiff must state with particularity the circumstances constituting the fraud. *See* Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id*. Importantly, "Rule 9(b) ought not stand as a needless technical obstacle when the other details of the amended complaint persuasively demonstrate that the absent

detail is likely to be uncovered if the case is permitted to proceed." *United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 892–93 (E.D. Wis. 2016).

When alleging an expansive scheme to defraud the government, the amended complaint need not contain details of every instance of fraud; rather, it need provide only "representative examples of the fraud." *United States ex rel. Cieszyski v. LifeWatch Servs.*, 2015 WL 6153937, 11, 2015 U.S. Dist. LEXIS 141721, 33 (N.D. Ill. Oct. 19, 2015) (quoting *U.S. ex rel. Bragg v. SCR Medical Transp., Inc.*, 2011 WL 1357490, 2, 2011 U.S. Dist. LEXIS 38786, 6–7 (N.D. Ill. April 8, 2011)). "[a] plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples." *United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 760–61 (N.D. Ill. 2015) (citing *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010) (where the court found that the complaint satisfied Rule 9(b) because the plaintiff gave "concrete examples, identifying the individuals and businesses involved, the relevant time frames, and the manner in which the bribes or kickbacks were paid").

Here, Relator adequately sets forth the who, what, where, when, and how necessary to survive a motion to dismiss. As demonstrated above, the FAC contains plausible, detailed allegations describing: Defendants' motives (FAC ¶¶ 63-69); the scope of the Free Nurse program and the benefits the program confers on Prescribers and their staff, which induce them to prescribe the Covered Products (FAC ¶¶ 68-69, 73-85); the development of the Defendants' Support Services program (FAC ¶¶ 70-72, 86-99); an explanation of how the Support Services program functions and how it provides benefits to Prescribers and their staff that induce them to prescribe Cimzia (FAC ¶¶ 86-114); the nation-wide scope of the schemes (FAC ¶¶ 121); the timeframe of the expansive and long-lasting schemes (FAC ¶¶ 116); the Government Programs that reimburse

prescriptions for the Covered Products (FAC ¶¶ 116-122); an explanation of why claims submitted to the Government programs for the Covered Products are false claims (FAC ¶¶ 115-122) and an explanation of why Defendants knew that these false claims would be submitted (FAC ¶¶ 100, 119-122).

Defendants suggest the FAC fails to demonstrate that any known doctors actually utilized the nurse education and reimbursement support services. *See* RX Crossroads MTD at 18. The FAC, however, identifies specific employees of Defendants who provided and promoted these services as well as the timeframe and area of the country in which they provided and promoted these services, including those identified as confidential informants who provided key details in the allegations of the FAC. FAC ¶¶ 63, 78, 98, 105-107. The FAC provides sufficient information to provide Defendants with fair notice of Relator's claims and establish their factual foundation. Relator has, therefore, met its pleading obligations under Rule 9(b).

Although Relator must demonstrate a causal link between Defendants' fraudulent activities and the submission of false claims, Relator does not have to identify any specifically induced prescriptions or false claims. Relator may also satisfy the pleading requirements by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. Relator has done far more than allege publicly available information regarding Medicare and Medicaid reimbursement and make conclusory allegations. Relator has submitted plausible allegations that establish a nexus between the fraudulent schemes and the submission of claims to Government programs for Cimzia. For example, the FAC reveals testimony of confidential informants explaining that the schemes had the effect of increasing prescriptions of Defendants' drugs. FAC ¶¶ 67, 71, 80-84, 99-102. The FAC also explicitly states that through the reimbursement support services, Defendants assisted

Prescribers and their staff with obtaining pre-authorization and reimbursement from Medicaid and Medicare. FAC ¶¶ 90-91. Further, the FAC identifies specific areas, timeframes, and physicians who were targeted with Defendants' two schemes. FAC ¶ 117-119.

These allegations, taken as true, establish that Defendants' Free Nurse and Support Services programs had the effect of inducing physicians to prescribe UCB-manufactured Cimzia, and that at least some of those prescriptions were submitted to Medicaid and Medicare for reimbursement. This is sufficient to give rise to the "strong inference" that false claims were in fact submitted. *See United States ex rel. Brown v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1037 (C.D. Cal. 2016) (evidence showing that defendant "engaged in a systematic campaign to promote off-label prescriptions of its drugs, that physicians who received more promotional contacts prescribed at a higher rate than those who received fewer contacts, and that claims for off-label prescriptions were presented to the government in the hundreds of thousands following Celgene's promotional activities—constitutes 'sufficiently detailed circumstantial evidence' that false claims were presented as a result of Celgene's conduct").

**D.  The FAC Adequately Alleges an Anti-Kickback Statute Violation.**

Under § 3729(a)(1)(A), in order to prove an FCA violation, Relator must allege: (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 259 (5th Cir. 2014) (quotations and citations omitted). Importantly, compliance with the AKS and its state-equivalents is required for reimbursement of claims from federal health care programs (e.g., Medicare) and state health care programs (i.e. Medicaid). A claim that includes items or

11

services resulting from a violation of . . . [the AKS] constitutes a false or fraudulent claim for purposes of the FCA. 42 U.S.C. § 1320a-7b(g).

The Anti-Kickback Statute, in relevant part, makes it unlawful to knowingly and willfully offer or pay any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program. 42 U.S.C. § 1320a–7b(b)(2). The elements of an AKS violation Relators must plead are that Defendants: (1) offered or paid remuneration to others; (2) to induce them to purchase, order, or recommend purchasing any good or item that may be paid by a Federal health care program, and (3) did so knowingly and willfully. This concept of remuneration is the focus of Defendants' motions to dismiss.

DHHS, the federal agency charged with interpreting the AKS, has consistently maintained that the use of the term remuneration in the AKS statute "demonstrate[s] congressional intent to create *a very broadly worded prohibition*," and explained that remuneration under the AKS means "anything of value *in any form or manner whatsoever*." 56 Fed. Reg. 35952, 35958 (July 29, 1991) (emphasis added). Courts have likewise stated remuneration can include anything of value—and in any form—which is given in return for, or to induce, a referral for federal healthcare services. *United States ex rel. Bartlett v. Ashcroft*, 39 F. Supp. 3d 656, 677–78 (W.D. Pa. 2014) (quoting *United States v. Greber*, 760 F.2d 68, 71 (3d Cir. 1985)).

In the Compliance Program Guidance for Pharmaceutical Manufacturers issued by the OIG on May 5, 2003 ("2003 OIG Guidance"), the OIG highlighted several known areas of potential risk. OIG Compliance Program Guidance for Pharmaceutical Manufacturers, 68 FR 23731-01,

12

2003 WL 2010428, at *23734 (May 5, 2003). The discussion highlights potential risks under the anti-kickback statute arising from pharmaceutical manufacturers' relationships with three groups: purchasers (including those using formularies) and their agents; persons and entities in a position to make or influence referrals (including physicians and other health care professionals); and sales agents. *Id*. at *23735. Under "Relationships with Purchasers and their Agents," Product Support Services was one area of potential risk discussed. According to the OIG, these remunerative relationships potentially implicate the AKS. The OIG's discussion focuses on relationships with physicians, "but the same principles would apply when evaluating relationships with other parties in a position to influence referrals, including, without limitation, pharmacists and other health care professionals." *Id*. One can show independent value by showing the goods or services provided by the manufacturer eliminated an expense the physicians would have otherwise incurred. Relator set forth this information in the FAC wherein, it specifically alleges the services at issue provide independent value to the prescribers beyond product support because the services eliminate substantial expenses the prescribers would otherwise have to incur. FAC ¶¶ 73-74, 78-80, 88, 92-96. In fact, one of Relator's confidential informants actually stated that these prescribers are getting a kickback. FAC ¶ 80.

      The term "any remuneration" in the AKS suggests an expansive reading of the form of any kickback directly or indirectly, as opposed to a narrow reading that would exclude the allegations here. 42 U.S.C. § 1320a-7b (b)(1 & 2)(A). Relator adequately pleaded Defendants set up a system whereby physicians received something of independent value if they prescribed Cimzia. At a minimum, the allegations raise a question as to whether the free nurse and reimbursement support services provided by Defendants eliminated an expense prescribers would otherwise have had to incur.

### E. The FAC Adequately Alleges an FCA Conspiracy Claim.

"The FCA provides for conspiracy claims, *see* 31 U.S.C. § 3729(a)(3), and general civil conspiracy principles apply." *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 546 n. 3 (7th Cir. 1999) (citing United States v. Murphy, 937 F.2d 1032, 1039 (6th Cir. 1991)). CVS and Omnicare make quick reference to Relator's conspiracy claims arguing that the allegations are simply conclusory. Although CVS and Omnicare's statements are conclusory, the same cannot be said for Relator's allegations. The FAC alleges that: (1) all defendants were aware of the AKS and disregarded the fact that the alleged schemes violated the AKS (FAC ¶¶ 65, 108, 116-122); (2) each of the defendants had a critical role, described in detail, in the alleged schemes (*id.*); and (3) the express purpose of the cooperation among Defendants was to hide violations of the AKS. *Id.* These specific and detailed allegations, when taken as true, allow a reasonable inference that Defendants agreed, either explicitly or implicitly, to work together to enact a kickback scheme that would result in the filing of millions of dollars of false claims, thereby defrauding the Government in exchange for their own profit. While additional evidence of this conspiracy will come to light during fact discovery, nothing more is needed at the pleading stage.

### F. CVS and Omnicare are Proper Defendants.

Defendants CVS and Omnicare separately argue that they should be dismissed because their only role in these allegations is as a parent company. To the contrary, these defendants are inter-related to this scheme. "The allegation that Defendants are inter-related and that they acted together does not alone require dismissal under Rule 9(b)." *United States ex rel. Tucker v. Christus*

*Health*, 2012 WL 5351212, at *4 (S.D. Tex. Oct. 23, 2012); *United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, No. 3:14-CV-00118-M, 2016 WL 5661644 at *9 (N.D. Tex. Sept. 30, 2016) (noting that a complaint adequately pleads as to each defendant if it "distinguishes between the two entities and describes the parties' relationship with each other and to the scheme"). CVS and Omnicare played a role in the provision and implementation of the services outlined herein. FAC ¶¶ 12-14. Because the FAC explains each Defendant's role in the Defendants' fraudulent schemes – which were described in extensive detail as conveyed by multiple parties with personal knowledge – each Defendant is able to understand the nature of the Relator's claims against them. Relator has accordingly satisfied both the goal and the standard for Rule 9(b).

### G. The FAC Adequately Alleges State FCA and AKS Claims.

Defendants' secondary argument that Relator's state FCA claims should be dismissed because the FAC does not contain state-specific allegations similarly fails. The FAC contains evidence from confidential informants who have knowledge of the perpetration of the accused schemes throughout the United States. FAC ¶¶ 63, 78, 98, 105-107. The FAC unequivocally demonstrates that Defendants deployed their fraudulent schemes across the nation, and that Cimzia was marketed, prescribed, and sold nationwide. Claims were submitted to federal and state healthcare programs, including Medicare and Medicaid, in most, if not all, states for each of the covered products." FAC ¶¶ 115-122.

Defendants argue that because state false claims laws are analogous to the FCA and are generally interpreted under the same standards, Relator's claims under state false claims laws fail together with Relator's claims under Federal law. But as demonstrated, the FAC adequately pleads Relator's federal claims.

### V.   CONCLUSION

15

Relator's First Amended Complaint fully sets out the allegations of Defendants' fraudulent scheme and AKA and FCA violations as required by the Federal Rules of Civil Procedure. Further, because these allegations are based upon independent and original information and differ from previous unrelated lawsuits and other unrelated public disclosures, this case is not barred from moving forward. For these reasons and all of the reasons outlined herein, Relator respectfully requests this Court deny Defendants' motions to dismiss in their entirety.

Dated this the 29th day of July, 2019.

/s/ Leslie L. Pescia
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
W. DANIEL "DEE" MILES, III (*pro hac vice*)
C. LANCE GOULD
ALISON D. HAWTHORNE *(pro hac vice)*
LESLIE L. PESCIA (*pro hac vice*)
272 Commerce Street
Post Office Box 4160 (36103)
Montgomery, Alabama 36104
Telephone:  334-269-2343
Facsimile:   334-954-7555

**QUANTUM LEGAL LLC**
RICHARD J. BURKE (BAR NO. 6255504)
513 Central Avenue
Suite 300
Highland Park, Illinois 60035
Telephone:  847-433-4500
Facsimile:   847- 433-2500

*Attorneys for Plaintiff-Relator*

## **CERTIFICATE OF SERVICE**

I certify that I caused this document filed through the ECF system to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

Dated: July 29, 2019  By:  /s/ Leslie L. Pescia
                           LESLIE L. PESCIA